(November 23, 2016)

█ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYSON POULOS, Appellant. [43 NYS3d 148]—

Lynch, J. Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered August 13, 2014, upon a verdict convicting defendant of the crime of aggravated harassment of an employee by an inmate (two counts).

In January 2014, defendant, an inmate, flooded his cell by repeatedly flushing the toilet. He also defecated and urinated on the cell floor. When correction officers responded, defendant allegedly kicked the pooled toilet water onto two of the officers. Defendant was charged with two counts of aggravated harassment of an employee by an inmate. Following a jury trial, he was convicted as charged and sentenced as a second felony offender to consecutive prison terms of 2½ to 5 years. Defendant appeals.

Initially, we reject defendant's contention that County Court erred in denying his motion to dismiss the indictment as multiplicitous for the two counts related to different victims (*see People v Kindlon*, 217 AD2d 793, 794-795 [1995], *lv denied* 86 NY2d 844 [1995]; *compare People v Hoffman*, 130 AD3d 1152, 1154 [2015], *lv denied* 26 NY3d 1009 [2015]).

Next, defendant maintains that the indictment was legally

insufficient in that the alleged act of "kicking" the toilet water is not proscribed by the statute. We disagree. Aggravated harassment of an employee by an inmate requires that an inmate, "with intent to harass, annoy, threaten or alarm a person in a facility whom he or she knows or reasonably should know to be an employee of such facility . . . causes or attempts to cause such employee to come into contact with blood, seminal fluid, urine, feces, or the contents of a toilet bowl, by *throwing, tossing* or *expelling* such fluid or material" (Penal Law § 240.32 [emphasis added]). We have previously recognized that the statute prohibits specific conduct limited to "throwing, tossing or expelling" the listed substances and, by doing so, "the Legislature limited criminalization to contact through those methods and excluded other methodologies" (*People v Polanco*, 2 AD3d 1154, 1155 [2003]).* The dispute thus centers on whether the act of "kicking" falls within the scope of "expelling" as prohibited by the statute. Absent a controlling statutory definition, as here, words in a statute should be given their ordinary meaning (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 232; *People v Finley*, 10 NY3d 647, 654 [2008]; *People v Cruz*, 48 NY2d 419, 428 [1979], *appeal dismissed* 446 US 901 [1980]). "Expel" is defined as "[t]o drive out or away; to eject, esp. with force" (Black's Law Dictionary [10th ed 2014], expel). In *People v Stokes* (290 AD2d 71 [2002], *lv denied* 97 NY2d 762 [2002], *cert denied* 537 US 859 [2002]), we previously upheld a conviction under this statute where the defendant was alleged to have projected a bodily fluid on a correction employee by spraying the substance. While the spray container was not located in the ensuing cell search, we referenced the use of a container "to expel the substance" (*id.* at 73). Following this application, we conclude that defendant's act of kicking the water, and projecting same onto the correction officers, constitutes "expelling" the water within the embrace of the statute.

Next, defendant maintains that the verdict was against the weight of the evidence in view of discrepancies in the testimony of the correction officers as to how the event occurred. There is no dispute here as to defendant's flooding and soiling the cell floor. Defendant's contention is that the evidence fails to establish that he kicked the water onto the clothing of the two correction officers. When, as here, a different result would not have been unreasonable, we consider the rational inferences that could be drawn from the testimony presented and view

* We note that the statute was amended in 2013 to add "the contents of a toilet bowl" to the list of covered substances (*see* L 2013, ch 180, § 1).

such testimony in a neutral light, giving due deference to the jury's credibility determinations (*see People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Smith*, 96 AD3d 1088, 1089 [2012], *lv denied* 20 NY3d 935 [2012]). At the time of the incident, defendant was under a constant supervision watch monitored by Matthew Hubbard, a correction officer. After defendant flooded his cell, several correction officers responded to assist Hubbard, including Charlene Maday and Dustin Spring. The incident occurred as Maday and Spring backed out of defendant's cell. The pivotal question is whether or not the cell door was closed or open when defendant kicked the water, and, if the latter, to what degree.

The gap between the door and the floor was 2¹/₈ inches. In the area outside of the cell, the officers had spread towels to block the flow of water down the hallway. Hubbard testified that defendant kicked the water toward Spring and Maday as they were backing out of the cell. On cross-examination, however, Hubbard was impeached by his grand jury testimony in which he stated that the cell door was closed behind the officers before the kicking began. Maday testified that the door was almost closed when defendant kicked the water, which came out from under the door, came over the towels and landed on the bottom half of her pants and boots as well as on Spring. A video of the incident, according to Maday, showed her looking down at her pants after the water hit her clothing. Weighing this testimony and giving due deference to the jury's credibility assessment, we cannot say that the verdict was against the weight of the evidence (*see People v Smith*, 96 AD3d at 1089; *People v Figueroa*, 53 AD3d 779, 780 [2008], *lv denied* 11 NY3d 832 [2008]; *People v Merrill*, 27 AD3d 773, 774 [2006], *lv denied* 6 NY3d 896 [2006]).

We do find that County Court erred in denying defendant's request to represent himself at trial. It is settled that "[a] defendant in a criminal case may invoke the right to defend *pro se* provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (*People v McIntyre*, 36 NY2d 10, 17 [1974]; *see People v Gilbo*, 52 AD3d 952, 954-955 [2008], *lv denied* 11 NY3d 788 [2008]). Here, the record establishes that defendant clearly and unequivocally asserted his right to represent himself prior to the start of a suppression hearing one week before the trial began. At that point, County Court was required to "conduct a thorough inquiry to determine whether the waiver was made

intelligently and voluntarily" (*People v Smith*, 68 NY2d 737, 738 [1986], *cert denied* 479 US 953 [1986]). In doing so, the court "should undertake a sufficiently searching inquiry in order to be reasonably certain that a defendant appreciates the dangers and disadvantages of giving up the fundamental right to counsel" (*People v Smith*, 92 NY2d 516, 520 [1998] [internal quotation marks and citations omitted]; *see People v Arroyo*, 98 NY2d 101, 103 [2002]; *People v Dashnaw*, 116 AD3d 1222, 1230-1231 [2014], *lv denied* 23 NY3d 1019 [2014]).

Our review of the record shows County Court inquired into defendant's background, emphasized the importance of having counsel represent him, cautioned against the dangers of representing himself and tested defendant's skill as an advocate with several evidentiary questions. The issue, however, is not the extent of defendant's legal knowledge, but his capacity to knowingly waive the right to counsel (*see People v Arroyo*, 98 NY2d at 103; *People v Dashnaw*, 116 AD3d at 1231). In denying the request, County Court essentially ruled that it was not in defendant's best interest and that the application was untimely, without expressly addressing defendant's capacity to waive his right to counsel. Since defendant's request was made prior to the commencement of trial, it was unquestionably timely (*see People v McIntyre*, 36 NY2d at 17). Moreover, we are satisfied that defendant, who informed the court that he had obtained his GED and engaged in paralegal studies for a year, and was described by the court as "bright" and "articulate," competently, intelligently and voluntarily waived his right to the counsel. Insofar as the People maintain that the court denied defendant's request due to his disruptive behavior, we first point out that County Court in no way stated that defendant's behavior was a factor in its decision to deny his request. Moreover a court may not validate an erroneous denial of a pro se motion "on the basis of a postruling outburst" (*People v McIntyre*, 36 NY2d at 18). Accordingly, we conclude that defendant was improperly denied the right to proceed pro se and, therefore, the judgment must be reversed and the matter remitted for a new trial (*see People v Hamilton*, 133 AD3d 1090, 1094 [2015]).

Since the matter is going back for a new trial, we agree with defendant that County Court erred in denying his request for a missing evidence charge. Maday testified that she and Spring promptly changed out of and washed their clothing. As the People concede, the clothing would have been relevant evidence (*see People v Smith*, 96 AD3d at 1089). Notably, defendant made a timely discovery demand for any DNA testing of the soiled

clothing. Under these circumstances, defendant is entitled to a permissive adverse inference charge, allowing the jury to draw a negative inference from the absence of that material evidence (*see People v Handy*, 20 NY3d 663, 669-670 [2013]).

In view of this determination, defendant's remaining arguments, advanced by both defense counsel and in a supplemental brief submitted by defendant pro se, are rendered academic.

McCarthy, J.P., Devine, Mulvey and Aarons, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.