■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISAIAH CURRY, Appellant. [59 NYS3d 161]—

Lynch, J. Appeal from a judgment of the County Court of Schenectady County (Catena, J.), rendered August 22, 2014, upon a verdict convicting defendant of the crimes of burglary in the second degree, robbery in the second degree, grand

larceny in the fourth degree, assault in the third degree, criminal mischief in the fourth degree and endangering the welfare of a child.

Defendant was charged in a six-count indictment with burglary in the second degree, robbery in the second degree, grand larceny in the fourth degree, assault in the third degree, criminal mischief in the fourth degree and endangering the welfare of a child. The charges stemmed from an incident on September 19, 2013 during which defendant allegedly assaulted his former paramour (hereinafter the victim) in the presence of her one-year-old child, took her apartment key from her person, and then entered and ransacked the apartment. Following a jury trial, defendant was convicted as charged. County Court sentenced him to concurrent prison terms, the longest of which was 12 years, with five years of postrelease supervision. Defendant appeals.

To begin, we are unpersuaded by defendant's contention that the verdict is not supported by the weight of the evidence. There is no dispute that the incident evolved out of an argument between defendant and the victim over a cell phone that defendant provided to the victim that same day, which she did not return. Accepting that a different result would not have been unreasonable given their differing versions of the event, "we consider the rational inferences that could be drawn from the testimony presented and view such testimony in a neutral light, giving due deference to the jury's credibility determinations" (*People v Poulos*, 144 AD3d 1389, 1390-1391 [2016]; *see People v Danielson*, 9 NY3d 342, 348-349 [2007]). As charged here, "[b]urglary in the second degree requires that the People prove that defendant knowingly entered or remained unlawfully in a dwelling with intent to commit a crime therein" (*People v Womack*, 143 AD3d 1171, 1171 [2016] [internal quotation marks, brackets and citations omitted], *lv denied* 28 NY3d 1151 [2017]; *see People v Garcia*, 131 AD3d 732, 733 [2015], *lv denied* 27 NY3d 997 [2016]; *People v Briggs*, 129 AD3d 1201, 1202-1203 [2015], *lv denied* 26 NY3d 1038 [2015]). "A person is guilty of robbery in the second degree when he [or she] forcibly steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] . . . [c]auses physical injury to any person who is not a participant in the crime" (Penal Law § 160.10 [2] [a]; *accord People v Wilkerson*, 140 AD3d 1297, 1301 [2016], *lv denied* 28 NY3d 938 [2016]; *People v Lawrence*, 141 AD3d 828, 830 [2016], *lv denied* 28 NY3d 1073 [2016]). A person is guilty of grand larceny in the fourth degree when he or she steals property

"from the person of another," regardless of its nature and value (Penal Law § 155.30 [5]; *see People v Colon*, 24 AD3d 1114, 1115 [2005], *lv denied* 6 NY3d 811 [2006]).

As relevant here, "[a] person is guilty of assault in the third degree when[,] . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]; *see People v Haardt*, 129 AD3d 1322, 1323 [2015]; *People v Peterson*, 118 AD3d 1151, 1155 [2014], *lv denied* 24 NY3d 1087 [2014]). "Physical injury includes the 'impairment of physical condition or substantial pain' " (*People v Haardt*, 129 AD3d at 1323, quoting Penal Law § 10.00 [9]). "A person is guilty of criminal mischief in the fourth degree when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she . . . [i]ntentionally damages property of another person" (Penal Law § 145.00 [1]; *see People v Wallender*, 27 AD3d 955, 956 [2006]). Finally, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old" (Penal Law § 260.10 [1]; *see People v Murrell*, 148 AD3d 1296, 1297 [2017]).

The victim testified that she invited defendant to her apartment to "hang out." During a walk, defendant stopped to speak with another woman. The victim then asked to use defendant's cell phone, and became upset after viewing photographs stored on the phone. She then left the phone in a separate area and returned to her apartment. Defendant then returned seeking his phone and threatened to kill her if she did not open the door. The victim came outside, locking the door behind her, while holding the child. Defendant then attacked and grabbed her, causing her to twist her ankle. This altercation was witnessed by a neighbor, who offered to and did take the child and then called 911. Defendant took the key from the victim's person, and reentered and then ransacked the apartment, apparently in an effort to find the phone. The victim further testified that defendant punched her in the face numerous times while inside the apartment. After the police and paramedics arrived, the victim was taken to the hospital and treated for various facial bruises. Photographs of her injuries and the ransacked apartment were received into evidence. Notably, one responding officer testified that he stopped defendant, who matched the neighbor's description, near the scene and asked for his name. Defendant responded with a false name and ran away, only to be apprehended a few blocks away. In addition,

the People introduced evidence of a phone call from prison in which the caller identified himself as "Jesus," described the condition of the victim's apartment and arranged to have the victim threatened. The victim identified defendant as the caller and testified that she was threatened the next day by three women at her door who were demanding the phone, and the victim made a 911 call for protection, which call was also played for the jury. Viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we find that the weight of the evidence readily supports the verdict for each conviction (see People v Davis, 149 AD3d 1246, 1247 [2017]; People v Murrell, 148 AD3d at 1298; People v Irby, 140 AD3d 1319, 1322 [2016], lv denied 28 NY3d 931 [2016]; People v Wilkerson, 140 AD3d at 1301-1303).

We do find, however, that County Court erred in denying defendant's request to represent himself at trial. A defendant may invoke the right to represent himself or herself at trial "provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (People v McIntyre, 36 NY2d 10, 17 [1974]). At an apppearance on May 19, 2014, defendant's counsel informed County Court (Drago, J.) that defendant wanted to represent himself at trial. The court duly inquired into defendant's educational background, which included a GED earned in 2003, and engaged in an extensive colloquy with defendant emphasizing the importance of having counsel represent him. During this exchange, when asked to explain his decision, defendant gave the extraordinary response, "I don't really have much explanation for it, just like I've been making bad choices, why not continue." Defendant then illogically acknowledged this was a bad choice on his part. County Court understandably encouraged defendant to reconsider his decision, and directed that a transcript of the proceeding be provided to the trial judge who would make the decision on the application.

When the trial began on May 27, 2014, County Court (Catena, J.), having reviewed the transcript, directly addressed the representation issue with defendant. Defendant elaborated that he had decided to represent himself because he had been unrepresented for the "first seven months of incarceration" and felt he had "a better chance of representing [himself]." He continued, "So I feel like nobody's going to fight for my life like I'm going to fight for it." After confirming that assigned counsel was prepared to go forward, County Court denied defendant's

request to proceed pro se, reasoning that it would not be appropriate or a "wise choice" for defendant to do so. As understandable as that reasoning is, the issue is not whether defendant was making a prudent decision, but whether he had the capacity to knowingly waive his right to counsel (*see People v Poulos*, 144 AD3d at 1392; *People v Hamilton*, 133 AD3d 1090, 1094 [2015]). While defendant's initial extraordinary explanation raised a cause for concern, we conclude that his confirmation at trial demonstrates that he knowingly and unequivocally waived his right to counsel. Since defendant was improperly denied the right to proceed pro se, the judgment must be reversed and the matter remitted for a new trial (*see id.*). As a result, defendant's remaining contentions have been rendered academic.

McCarthy, J.P., Garry, Rose and Devine, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Schenectady County for a new trial.