People v Poulos (2024 NY Slip Op 05152)

People v Poulos

2024 NY Slip Op 05152

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

108662
[*1]The People of the State of New York, Respondent,
v
Tyson Poulos, Appellant.

Calendar Date:September 11, 2024

Before:Aarons, J.P., Lynch, Ceresia, McShan and Mackey, JJ.

Paul J. Connolly, Delmar, for appellant, and appellant pro se.
Jason M. Carusone, District Attorney, Lake George (Robert P. McCarty of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the County Court of Warren County (John S. Hall Jr., J.), rendered June 29, 2016, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree (two counts), criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree and criminal sale of a controlled substance in the third degree (two counts).
In January 2014, the Warren County Sheriff's Department received a tip from a confidential informant that defendant, who had an outstanding arrest warrant, was selling drugs out of room 118 at the Budget Inn Motel in the Town of Queensbury. Members of the Warren County Narcotics Enforcement Unit responded to the motel and proceeded to room 118, which was registered to defendant's girlfriend. Defendant and his girlfriend were both present and, after allegedly obtaining the girlfriend's consent, officers entered and searched the room, where they discovered heroin and crack cocaine, smaller quantities of other scheduled drugs and items that appeared to be associated with reselling the drugs. The officers also seized two cell phones from inside the motel room. In connection therewith, defendant was charged by indictment with, in relevant part, two counts of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, criminal possession of a controlled substance in the seventh degree and aggravated harassment in the second degree.[FN1] When evidence was later discovered that defendant had sold drugs out of the motel, he was also charged in a separate indictment with two counts of criminal sale of a controlled substance in the third degree and the two indictments were consolidated for trial. After trial, defendant was convicted of both counts of criminal possession of a controlled substance in the third degree (counts 1 and 2), each count of criminal possession of a controlled substance in the fourth and seventh degrees (counts 3 and 4, respectively) and both counts of criminal sale of a controlled substance in the third degree (counts 5 and 6). Thereafter, County Court sentenced defendant to various concurrent and consecutive terms of incarceration, with the aggregate of the consecutive sentences amounting to a prison term of 32 years, to be followed by three years of postrelease supervision, and imposed a $5,000 fine upon him. Defendant appeals.
We begin by addressing defendant's argument that County Court erred in denying his request to represent himself at trial. "A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (People v McIntyre, 36 NY2d 10, 17 [1974]; see People [*2]v Atutis, 222 AD3d 1106, 1106 [3d Dept 2023]; People v Curry, 152 AD3d 818, 821 [3d Dept 2017], lv denied 30 NY3d 948 [2017]; People v Poulos, 144 AD3d 1389, 1391 [3d Dept 2016]).
At his arraignment in April 2014, defendant informed County Court that he "was considering the possibility of going pro se." The court responded that such a move was typically "a bad idea" because counsel's education and experience "can really be a great benefit for you." The court inquired into defendant's educational background and, after testing his understanding of the law, acknowledged that defendant's knowledge put him "ahead of a lot of people." However, it noted that "it would be unrealistic to think that [he had] the knowledge and experience [of] somebody who's gone through three years of law school plus been practicing law a number of years." Still, the court indicated that it would consider a future application to proceed pro se, before urging defendant "to reconsider that idea. It's just a bad idea." Thereafter, by letters dated August 15, 2014 and September 22, 2014, defendant's counsel informed the court that defendant wanted to represent himself at trial.[FN2] Having received no response from the court, on September 25, 2014, defendant filed a motion requesting that the court allow him to proceed pro se. To illustrate his competence to proceed without the assistance of counsel, defendant prepared his own omnibus motion which, according to his counsel at the time, "demonstrate[d] an understanding of the nature of the proceedings." Without conducting any inquiry to determine if defendant's waiver of counsel and request to represent himself was knowing and intelligent, the court, seemingly relying upon its determination in a prior unrelated criminal matter that defendant was incompetent to represent himself, summarily denied his request.[FN3]
A court may not summarily deny a defendant's request to represent himself or herself, even if the court believes it to be in the defendant's best interest to be represented by counsel (see People v Poulos, 144 AD3d at 1392). Once defendant made his request, which was unequivocal and timely, County Court was required to conduct a colloquy to determine whether he was making a voluntary and intelligent waiver of his right to counsel (see People v Smith, 68 NY2d 737, 738 [1986], cert denied 479 US 953 [1986]). There is no merit to the People's argument that defendant forfeited his right to represent himself by engaging in disruptive behavior. To the contrary, aside from an isolated incident during the grand jury proceedings, the record does not reflect any disruptive behavior by defendant before the court denied his request to represent himself. Nor did the court make any explicit findings that defendant would not comply with the court's directives if he were allowed to represent himself. In any event, even if the court believed defendant's motion was "a disingenuous attempt to subvert the overall purpose of the trial," it was nevertheless [*3]required "to conduct a dispassionate inquiry into the pertinent factors" (People v McIntyre, 36 NY2d at 19), which it failed to do. Since defendant was improperly denied the right to proceed pro se, the judgment must be reversed and the matter remitted for a new trial (see People v Poulos, 144 AD3d at 1392).
Next, we address defendant's motion to suppress, as relevant to a new trial. Defendant contends that evidence seized from the motel room should have been suppressed because the warrant to arrest him was based on a charge that he had violated Penal Law § 240.30 (1) (aggravated harassment in the second degree), which statute was later held to be unconstitutionally vague (see People v Golb, 23 NY3d 455 [2014], cert denied 574 US 1079 [2015]). However, "[t]he subsequently determined invalidity of [a statute] on vagueness grounds does not undermine the validity of [an] arrest made for violation of that [statute], and the evidence discovered in the search of [defendant need not be] suppressed" (Michigan v DeFillippo, 443 US 31, 40 [1979]). Accordingly, County Court properly denied defendant's motion to suppress on the ground that his arrest was unlawful (see People v Pantusco, 107 AD2d 854, 855-856 [3d Dept 1985]).
Defendant also argues that the evidence seized from the motel room should have been suppressed because the People failed to show that his girlfriend, to whom the room was registered, consented to its search. Although there were some discrepancies in various witnesses' testimony, deferring to County Court's credibility determinations, we find no basis in the record to disturb the court's conclusion that the girlfriend voluntarily consented, both orally and in writing, to a search of the room (see People v Crispell, 223 AD3d 941, 942 [3d Dept 2024], lv denied 41 NY3d 964 [2024]; People v Brinkley, 174 AD3d 1159, 1163-1164 [3d Dept 2019], lv denied 34 NY3d 979 [2019]; People v Miller, 159 AD3d 1053, 1054 [3d Dept 2018]).
We do agree with defendant, however, that County Court erred in denying his motion to suppress evidence obtained through a search of his cell phones, as the application for a warrant to search the phones failed to establish probable cause. A search warrant application must contain "information sufficient to support a reasonable belief that . . . evidence of a crime may be found in a certain place" (People v Cruz, 221 AD3d 1423, 1424 [4th Dept 2023] [internal quotation marks and citation omitted], lv denied 41 NY3d 1001 [2024]; see CPL 690.35 [3] [b]; People v Alexander, 207 AD3d 878, 880 [3d Dept 2022], lv denied 39 NY3d 984 [2022]). The application "may be based upon personal knowledge of the applicant or upon information and belief, provided that in the latter event the sources of such information and the grounds of such belief are stated" (CPL 690.35 [3] [c]). "A presumption of validity attaches to a search warrant signed by a magistrate, and a court's determination that there is a probable cause for a search warrant must [*4]be afforded great deference" (People v Montgomery, 229 AD3d 899, 905 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Cruz, 221 AD3d at 1424-1425).
On June 20, 2014, County Court issued a warrant to search the contents of the seized cell phones. The warrant was issued based on the affidavit of an investigator, Anthony Bruno, which recited, in relevant part, that the Warren County Sheriff's Department received a tip from a confidential informant that drugs were being sold out of the motel room where the phones were found; that, in addition to the phones, various quantities of heroin, crack cocaine, methadone, vegetation and drug paraphernalia were seized from the motel room; and that the quantity and appearance of the drugs suggested they were packaged and intended to be sold. Based on this information, Bruno believed the "electronic or digital contents" of the phones "may" contain information about the owner of the cell phones and evidence of the commission of drug-related crimes committed by the phones' owner. The cell phones were subsequently searched pursuant to the warrant.[FN4]
In October 2014, defendant filed a motion to suppress the evidence obtained from that search, contending that Bruno's affidavit did not demonstrate probable cause to believe that evidence of a crime would be found within the phones. While that motion was pending, Bruno submitted a second search warrant application regarding the same phones. The only difference between the first application and the second was Bruno's addition of language indicating that, in his extensive law enforcement experience, "cell phones are almost always used by the sellers of narcotics to facilitate them in their sales." A second search warrant was issued in October 2014, and the phones were searched again. The results of the second analysis of the cell phones were identical to the first, with the exception that the second analysis included the phone number associated with one of the phones, whereas the first analysis did not include the phone number.
Defendant then filed a second motion to suppress, arguing that law enforcement's "attempt to cure defects in the first warrant application brought to light by the defense's motion to dismiss" constituted an improper "[s]econd [b]ite at the [a]pple." Even so, defendant argued that the improper attempt to cure the deficiencies of the first warrant still failed as there remained "insufficient [detail] to establish a nexus between [defendant's] alleged criminal activity and the phone[s]." After a hearing, County Court denied "[d]efendant's motion to suppress . . . in its entirety."
While we defer to all reasonable inferences that the magistrate could have made in issuing the initial search warrant, we find the original affidavit did not establish the probable cause required to issue a search warrant for defendant's cell phones. As noted, the warrant was supported by Bruno's affidavit, which stated that he believed the phones[*5]"may" contain digital data, including call histories, that would evidence the commission of criminal possession of a controlled substance in the third degree. However, the statute requires that a statement of reasonable cause based upon information and belief must also state "the sources of such information and the grounds of such belief" (CPL 690.35 [3] [c]), which was lacking here. Stated differently, even where there is probable cause to suspect the defendant of a crime, law enforcement may not search his or her cell phone unless they have information demonstrating that evidence is likely to be found there; some link sufficient to connect the two must be provided. Our review of the affidavit of probable cause in this case reveals no such link.
While Bruno recounted that there was a quantity of drugs found in the motel room, along with the two phones, he did not explain why the phones likely contained evidence of a crime. Although common sense and experience might suggest that cell phones found in the same room as a quantity of drugs could potentially contain evidence related to the sale of those drugs, "common sense alone does not establish probable cause to search a person's cell phone" (People v Jemmott, 164 AD3d 953, 954 [3d Dept 2018], lv denied 32 NY3d 1112 [2018]). The application's inadequacy is underscored by the subsequent application, submitted months later and shortly after defendant challenged the validity of the warrant. Notably, the only addition in the second application attempts to remedy this deficiency and the People concede that the second application was submitted in response to defendant's motion to suppress "[i]n lieu of litigating the issue." In the second application, Bruno stated that his vast experience as a law enforcement officer who investigates drug-related crimes led him to believe that the phones would contain pertinent evidence because "cell phones are almost always used by the sellers of narcotics to facilitate them in their sales." Although the addition of this contention arguably cured the deficiency in the initial application (see People v Alexander, 207 AD3d at 880-881), "obtaining a warrant to search [the phones] that had already been searched [cannot] cure the violation of . . . defendant's constitutional rights" (People v Perez, 88 AD3d 1016, 1018 [2d Dept 2011]; see People v Hickey, 172 AD3d 745, 747-748 [2d Dept 2019], lv denied 33 NY3d 1105 [2019]). Accordingly, having been obtained pursuant to an invalid search warrant, the evidence from the two recovered cell phones should have been suppressed (see People v Williams, 37 NY2d 206, 208 [1975]; People v Jemmott, 164 AD3d at 953-954; People v Mullins, 137 AD2d 227, 231- 232 [3d Dept 1988], lv denied 72 NY2d 922 [1988]).
During the various pretrial hearings held in this case, the People explained that through the text messages found on defendant's phone that suggested he was selling drugs, they "investigated the whereabouts of" the individuals defendant [*6]was texting, "reached out to th[ose] individuals" and then "filled in the gaps between [the] messages and what occurred." Further information about the discovery of evidence of the sales through the phone was discussed during the trial. Outside of the information uncovered through the data on the phone, the People had no independent basis for the sales charges that they brought against defendant. Accordingly, as the second indictment is, essentially, "fruit of the poisonous tree," the charges in that indictment — counts 5 and 6 as put forth to the jury — must be dismissed (People v Crispell, 223 AD3d at 945 [internal quotation marks and citations omitted]; compare People v Jordan, 154 AD3d 1176, 1176-1177 [3d Dept 2017]).
Lastly, we address defendant's argument that his convictions for criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree are against the weight of the evidence.[FN5] "Such review entails weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony while viewing the evidence in a neutral light and giving deference to the jury's credibility assessments" (People v Gibson, 121 AD3d 1416, 1418 [3d Dept 2014], lv denied 24 NY3d 1119 [2015] [internal quotation marks and citations omitted]; see People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Bleakley, 69 NY2d 490, 495 [1987]). Inasmuch as a different verdict would not have been unreasonable, we evaluate whether each element of the crimes charged was proven beyond a reasonable doubt (see People v Danielson, 9 NY3d at 348-349; People v Bleakley, 69 NY2d at 494-495). As relevant to counts 1 and 2, "[a] person is guilty of criminal possession of a controlled substance in the third degree when he [or she] knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it" (Penal Law § 220.16 [1]). As to count 3, "[a] person is guilty of criminal possession of a controlled substance in the fourth degree when he [or she] knowingly and unlawfully possesses . . . one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-eighth ounce or more" (Penal Law § 220.09 [1]). "Constructive possession may be established by circumstantial evidence and any conflict in the evidence regarding a defendant's dominion and control over the drugs in question creates issues of witness credibility, and the jury's determination in that regard must be accorded great deference" (People v Garcia-Toro, 155 AD3d 1086, 1086-1087 [3d Dept 2017] [internal quotation marks, brackets, ellipsis and citations omitted], lv denied 30 NY3d 1115 [2018]). "With respect to establishing a defendant's intent to sell drugs, the jury is allowed to infer, based on the amount of drugs at issue, that the defendant possessed them for the purpose [*7]of financial gain, rather than personal consumption" (People v Patterson, 199 AD3d 1072, 1075 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1163 [2022]).
Testimony at trial established that multiple law enforcement officers from the narcotics unit responded to the motel after receiving a tip that defendant was selling drugs out of room 118. After inquiring with the motel as to who was renting room 118, the officers learned that the room was rented by a female and that a male was staying with her. The officers proceeded to room 118, knocked, and the girlfriend answered the door. According to a Warren County Sheriff's Department investigator, he recognized defendant and asked him to exit the motel room. Defendant was then taken into custody on the outstanding warrant for his arrest. Although disputed by the girlfriend at trial, officers testified that she verbally consented to their search of the motel room. During their search, officers found a black plastic bag on a dresser and an orange knife with what appeared to be cocaine residue. Upon searching the black plastic bag, the officers found four bundles of heroin, some loose bags of heroin and several tie-offs containing crack cocaine. The heroin was packaged in blue tinted glassine bags. In addition to the black plastic bag, the officers located a black backpack which contained five additional bags of heroin and some empty glassine envelopes as well as a "green tie-off rag," a digital scale and a plastic spoon. A hypodermic needle was also found inside a dresser drawer. Defendant's ID, along with his photograph, a medicine bottle of methadone with defendant's name on it and two cell phones were also recovered from the scene.
A forensic scientist employed by the State Police testified that he analyzed the substances collected at the motel room. His analysis confirmed that the bags containing white material were cocaine with a total weight of more than an eighth of an ounce. Regarding the substance believed to be heroin at the motel room, the forensic scientist inventoried 53 blue glassine envelopes containing the powder suspected to be heroin as well as seven other glassine envelopes with residue. Testing revealed that the powder did contain heroin and after weighing, the forensic scientist determined that there was less than an eighth of an ounce of heroin. There were also 11 blue glassine envelopes recovered from inside the black backpack containing visible powder or residue, which the forensic scientist analyzed and determined was also heroin. A Warren County Sheriff's Department investigator testified that, based upon his training and experience, the glassine envelopes were typically used for packaging heroin for sale.
The girlfriend testified, pursuant to a cooperation agreement with the People, that around January 18, 2014, she suggested that she and defendant travel to the Warren County area and do a "drug flip" to secure cash for defendant's anticipated [*8]needs for bail on an unrelated charge. She gave defendant approximately $800; he bought drugs and then they brought those drugs up to Warren County. The girlfriend was not with defendant when he purchased the drugs, but she "got a couple glances of them" when he was packaging them in his house the night that he bought them. When they arrived at the motel, the girlfriend paid for and reserved the room in her name because defendant "didn't want to use his ID." She indicated that the plan was to then sell the drugs and return to the New York City area. Having never lived in the Warren County area herself, the girlfriend did not have any contacts or friends to whom she could make such sales. The girlfriend acknowledged that defendant was a heroin addict. Despite his addiction, she maintained that defendant was the one in constant possession of the drugs throughout the weekend because she "trusted that he would do what he said he was going to do with them." However, on cross-examination, the girlfriend admitted that during a period where defendant was out of the motel room he texted her and instructed her that an individual would be coming by the motel room, she was to get a quantity of drugs from the bag inside the room and give it to this individual in exchange for $100. She secured the $100 in her own pocketbook following the transaction. She noted that during that period when defendant left to retrieve luggage from the Albany bus station, she was in possession of the drugs, which were left with her in the motel room. By two letters sent to defendant following his arrest, the girlfriend referred to defendant as her "slave," told him that she "own[ed]" him and that she had "strength and power to dictate and rule him."
In his defense, defendant posited that it was the girlfriend who exercised "dominion and control over" the drugs in the black plastic bag found in the motel room. He testified that, prior to the police coming, the girlfriend kept the drugs in a locked box, suggesting that she was in fact in possession and had control of the drugs. He indicated that the girlfriend had a dominating personality in that she wanted to be in control, and she was a "pathological liar." While defendant admitted that the heroin found in the black backpack was his, he maintained that it was for personal use and not "getting ready to be packaged for some sort of sale." He emphasized that the different location of the drugs — i.e., in the plastic bag and the backpack — was evidence of different ownership. Defendant admitted that he "demanded" that the girlfriend give him bail money or he would tell her parents about her child. He testified that the girlfriend was able to obtain crack cocaine from her child's father, and that she indicated to defendant that they could sell that to get bail money for him. Defendant suggested to the girlfriend that people would not purchase the cocaine unless they could also purchase heroin, but he noted that this was a ploy to get heroin [*9]so he could get high himself when they got to Warren County. At that point, the girlfriend withdrew $500 or $600 to purchase the heroin. In this sense, defendant acknowledged that he was guilty of "conspiracy to distribute narcotics," but that was not what he was charged with.
Evaluating the evidence in a neutral light and according deference to the jury's credibility determinations, we find the jury's conclusion that defendant possessed the drugs to be supported by the record. Further, the quantity of heroin — over 50 bags — and crack cocaine — approximately 13 grams — found in the motel room also suggested that defendant's intent was to sell the drugs (see People v Garcia-Toro, 155 AD3d at 1087). That the crack cocaine weighed greater than one-eighth of an ounce and that there was a scale located in the motel room — suggesting that defendant knew the weights of the various drugs — supports the guilty verdict for criminal possession of a controlled substance in the fourth degree (see Penal Law § 220.09 [1]; People v Nelson, 156 AD3d 1112, 1115-1116 [3d Dept 2017], lv denied 31 NY3d 1151 [2018]). Thus, we do not find defendant's convictions to be against the weight of the evidence.
Since we are ordering a new trial, we find it unnecessary to address defendant's remaining arguments.
Aarons, J.P., Lynch, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is reversed, on the law, counts 5 and 6 are dismissed, and matter remitted to the County Court of Warren County for a new trial on the remaining counts.

Footnotes

Footnote 1: The aggravated harassment charge was the basis for defendant's outstanding arrest warrant and is not relevant to this appeal.

Footnote 2: The People concede that defendant's August 15, 2014 request to proceed pro se was "a timely and unequivocal assertion of [his] invocation of his right to" represent himself and that such request was a knowing and voluntary attempt to waive his right to counsel.
Footnote 3: County Court's determination in that matter was reversed on appeal (People v Poulos, 144 AD3d at 1391-1392).

Footnote 4: Data extracted from these phones revealed, among other things, several text messages that, according to the testimony of Bruno, contained language indicating that defendant used the cell phones to sell drugs.

Footnote 5: Because we are ordering dismissal of counts 5 and 6 and defendant concedes that the verdict as to count 4 was not against the weight of the evidence, we conduct a weight of the evidence review as to counts 1, 2 and 3 only.