People v Scott
2026 NY Slip Op 03844
June 18, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Mark Scott, Appellant.

Decided and Entered:June 18, 2026
113323 CR-25-0967
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Paul J. Connolly, Delmar, for appellant.
Mary Pat Donnelly, District Attorney, Troy (Claire E. Hayes of counsel), for respondent.

[*1]
McShan, J.
Appeals (1) from a judgment of the County Court of Rensselaer County (Jennifer Sober, J.), rendered November 4, 2021, upon a verdict convicting defendant of the crimes of robbery in the second degree and assault in third degree (two counts), and (2) by permission, from an order of said court, entered June 6, 2025, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
A husband (hereinafter victim A) and his spouse (hereinafter victim B; hereinafter collectively referred to as the victims) are the owners and operators of a convenience store in the City of Troy, Rensselaer County. In September 2020, shortly after the victims purchased the store, defendant allegedly entered the store and told victim A that he would have to pay defendant $150 a week to protect the business, and victim A responded that if he needed protection, he would call the police. Defendant returned the next day, again asking for payment, and when victim A refused, defendant began yelling at victim A, entered the employees only area in the store where the victims were, and repeatedly hit both victims, knocking them to the ground multiple times while continuously demanding payment. Eventually, victim A gave defendant money out of the cash register and defendant left the store. After law enforcement responded, both victims were transported to the hospital and treated for their injuries.
Defendant was subsequently charged by indictment with robbery in the second degree (count 1), robbery in the third degree (count 2), one count of assault in the third degree pertaining to victim A (count 3), one count of assault in the third degree pertaining to victim B (count 4) and criminal mischief in the fourth degree (count 5). Ultimately, the jury found defendant guilty on counts 1, 3 and 4. Defendant was sentenced to a prison term of seven years, to be followed by four years of postrelease supervision, on count 1 and lesser concurrent terms of 364 days of incarceration on counts 3 and 4. County Court also issued orders of protection in favor of the victims.
Defendant subsequently moved pursuant to CPL 440.10 to vacate the judgment of conviction alleging that he did not receive the effective assistance of counsel and that trial counsel's failings amounted to a denial of due process. County Court denied the motion without a hearing, finding first that defendant failed to include an affidavit of trial counsel or provide an adequate justification for that failure, and further finding that defendant failed to meet his burden of proving the existence of issues of fact to warrant a hearing. Defendant appeals from the judgment of conviction and, by permission of this Court, the denial of his CPL article 440 motion.
Turning first to his legal sufficiency and weight of the evidence arguments, defendant contends that the convictions for robbery in the second degree (count 1) and the assault pertaining to victim B (count 4) are not supported by [*2]legally sufficient evidence and, for the same reasons, the guilty verdicts as to those crimes are against the weight of the evidence. At the conclusion of the People's case, and renewed after defendant's case-in-chief, defendant moved for dismissal on the basis that the People failed to establish that the victims suffered physical injury. On appeal, defendant raises the same contention with respect to count 4 and, accordingly, his argument was adequately preserved (see People v Hebert, 218 AD3d 1003, 1104 n 1 [3d Dept 2023], lv denied 40 NY3d 1080 [2023]; People v Walker, 191 AD3d 1154, 1155 [3d Dept 2021], lv denied 37 NY3d 961 [2021]). We therefore assess his argument by viewing "the evidence in the light most favorable to the People and evaluat[ing] whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Warner, 194 AD3d 1098, 1099 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 1030 [2021]; see People v Morgan, 230 AD3d 864, 865 [3d Dept 2024], affd 45 NY3d 940 [2025]).
However, as to count 1, defendant contends that the evidence at trial does not support a conviction for robbery because the evidence failed to demonstrate that there was a use or threatened use of imminent force that was sufficiently temporal to when the victims turned over money from the cash register. That argument differs from the grounds asserted at trial, rending his legal sufficiency argument on count 1 unpreserved (see People v Zeoli, 248 AD3d 1422, 1423 [3d Dept 2026]; People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024]; People v Cruz, 137 AD3d 1158, 1160 [2d Dept 2016], lv denied 28 NY3d 970 [2016]; see also People v Reinfurt, 241 AD3d 1015, 1017 [3d Dept 2025], lv denied 44 NY3d 1067 [2026]). "Nevertheless, in the course of reviewing defendant's weight of the evidence challenge, this Court necessarily evaluates whether all elements of the charged crimes were proven beyond a reasonable doubt" (People v Osman, 228 AD3d at 1008 [internal quotation marks and citations omitted]; accord People v Marin, 239 AD3d 1028, 1029 [3d Dept 2025]). "When conducting a weight of the evidence review, this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Guynup, 226 AD3d 1085, 1085 [3d Dept 2024]).
As relevant here, "[a] person is guilty of robbery in the second degree when he [or she] forcibly [*3]steals property and when . . . [i]n the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [c]auses physical injury to any person who is not a participant in the crime" (Penal Law § 160.10 [2] [a]). "A person forcibly steals property and commits robbery when, in the course of committing a larceny, he [or she] uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or . . . [c]ompelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny" (Penal Law § 160.00). "A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]; see People v Wilder, 200 AD3d 1303, 1304 [3d Dept 2021]). " 'Physical injury' means impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "Substantial pain must be more than slight or trivial but need not be severe or intense, and the determination of whether pain is substantial considers the objective nature of the injury, the victim's subjective experience and whether the victim sought medical treatment" (People v Peasley, 208 AD3d 1466, 1468-1469 [3d Dept 2022] [internal quotation marks, ellipsis and citations omitted], lv denied 39 NY3d 1074 [2023]).
At trial, victim A testified that, on September 10, 2020, defendant entered the store and told victim A that he would need to pay defendant $150 per week for "protection." Victim A declined, responding that he would instead contact the police if necessary, and defendant left without incident. According to victim A, defendant returned the following day and renewed his request to be paid. Security footage from multiple cameras confirms defendant's arrival at the store, where he first engaged in a discussion with victim A through a window between the customer area and employee area. As the discussion progressed, defendant became increasingly animated, eventually walking through a doorway into the employee area where the victims were working and where the cash register was located. Defendant became more aggressive in his mannerisms and, as victim A went to retrieve his phone, defendant encroached further into the employee area and slapped victim A's phone out of his hand. The two reached for the phone, but defendant retrieved it first and placed it into his pocket. Defendant subsequently struck the cash register, at which point victim A motioned to victim B, prompting her to go get her phone and begin calling 911. The 911 call connected, and the recording of that call was played for the jury. Although the recording was largely unclear, a male voice can be heard multiple times saying[*4], "pay me my money," alongside other statements spanning the encounter, such as, "I want cash," "pay me or die" and "I worked, pay me."
Meanwhile, after victim B went to get her phone, defendant first shoved victim A and, in response, victim A retrieved a small stepstool and briefly raised it, holding it defensively and positioning it between himself and defendant. Defendant struck the stepstool into victim A's face and then punched him twice. Victim B then put her phone down on a nearby chair and attempted to get between defendant and victim A, and defendant punched her in the head, causing both victims to fall. Defendant continued striking victim A multiple times as victim A covered up in defense. When victim B attempted to retrieve her phone, defendant again began striking both victims, knocking them to the ground. While they were on the ground, defendant continued striking both victims before eventually grabbing victim B's phone, which had fallen to the floor, and placing it on a nearby counter. As victim A staggered to his feet, he attempted to pick up victim B's phone, prompting defendant to again strike him and victim B while prying the phone away from victim A. Now in possession of both victims' phones, defendant yelled at them for a few more minutes before walking to the customer area and positioning himself at the window. Defendant continued yelling and again approached through the doorway to the employee's area, at which point victim A opened the register, removed cash and offered it to defendant. Defendant moved toward victim A, pointed at the register and continued berating victim A, prompting victim A to remove additional money and turn it over to defendant. Defendant exited the store and left on his bicycle after he was given the money, and victim A retrieved the phones that had been left by defendant in the customer area of the store and reported the attacks and injuries to the dispatcher. According to victim A, after reviewing the cash register report he determined that he had given defendant $280.
Law enforcement arrived shortly thereafter and both victims were transported to a nearby hospital, where photographs documented injuries to victim A's nose and face and swelling and bruising to victim B's face and arms. Specifically, victim A testified that he had bruises on his face and a broken nose and that he could only work intermittently for 15 days after the accident. Victim B testified that the left side of her face had a lot of pain and swelling, which lasted for six months, and that she suffered bruising to her arms. Victim B's medical records substantiated the injuries to her face, noting her complaints of swelling and pain while moving her jaw, and photos taken by law enforcement at the hospital show swelling to the left side of her face and bruising to her arms.
In his defense, defendant called an individual who lived with him at the time, who testified that defendant performed side jobs in the neighborhood. To that end, [*5]the individual testified consistent with the questioning defense counsel had advanced during cross-examination of the victims, insinuating that defendant had been hired to paint the outside of the storefront; specifically, the individual averred that he observed defendant painting the border of the victims' store several days prior to Labor Day 2020. However, the individual acknowledged that he could not state the precise dates that he observed defendant working and did not directly observe conversations between defendant and victim A regarding the work.
On defendant's preserved challenge to the legal sufficiency of his conviction for assault in the third degree (count 4), we find no merit to his contention that the proof failed to demonstrate that victim B suffered a physical injury. Victim B testified that the pain in her face lasted for several months, and the pictures verified swelling to her face and bruising on her arms. Victim B's medical records confirmed that she received medical treatment for her injuries immediately after the attack. Victim A also testified that both victims were unable to return to work fully until approximately two weeks after the incident due to their need to use prescribed painkillers. Such evidence provides a valid line of reasoning from which a rational person could conclude that victim B sustained a physical injury as defined in Penal Law § 10.00 (9) (see People v Zakrzewski, ___ AD3d ___, ___, 2026 NY Slip Op 03029, *5 [3d Dept 2026]; People v McIntosh, 158 AD3d 1289, 1290 [4th Dept 2018], lv denied 31 NY3d 1015 [2018]; People v Mullings, 105 AD3d 407, 407-408 [1st Dept 2013], lv denied 21 NY3d 945 [2013]).FN1 Further, although a different verdict would not have been unreasonable had the jury discredited victim B's subjective account of her injuries, they did not, and we find no basis to disturb their determination (see People v Zakrzewski, ___ AD3d at ___, 2026 NY Slip Op 03029, *4-5; People v Wilder, 200 AD3d at 1305-1306). Accordingly, noting that defendant's intent to cause such injury can be gleaned from his actions, we find that the jury's verdict on count 4 is supported by the weight of the evidence (see People v Zakrzewski, ___ AD3d at ___, 2026 NY Slip Op 03029, *5, People v Dillon, 231 AD3d 1352, 1355 [3d Dept 2024]; People v Jones, 206 AD3d 1292, 1294 [3d Dept 2022]; People v Foster, 52 AD3d 957, 960 [3d Dept 2008], lv denied 11 NY3d 788 [2008]).
As to the robbery count (count 1), to the extent that defendant contends, in line with the theory he advanced at trial, that his intent was merely to recover payment for lawful work that he had done for the victims, we find it lacking in merit.FN2 On that, we note the unavailability of a claim of right defense "when the crime involves taking money by force to satisfy a preexisting debt" (People v Pagan, 19 NY3d 91, 97 [2012]; see People v Reid, 69 NY2d 469, 476 [1987]; see also People v Green, 5 NY3d 538, 544 [2005]). At best, defendant's theory would be relevant [*6]to his intent upon entering the store; however, the physical assaults that ensued coupled with defendant's repeated statements to pay him, irrespective of defendant's intermittent statements proclaiming that he worked, is indicative of his intent to deprive the victims of their money (see generally People v Favors, 155 AD3d 1081, 1082 [3d Dept 2017]; People v Newell, 148 AD3d 1216, 1221 [3d Dept 2017], lv denied 29 NY3d 1035 [2017]). To that, even accepting that defendant's frustration from the victims' refusal to pay him fueled the onset of violence, his continued use of force and repeated demands for payment, along with his retention of the victims' phones and his continued menacing presence until victim A turned over the money to him, reflect his underlying intent to compel payment through the use of physical violence (cf. People v Bowman, 79 AD3d 1368, 1369 [3d Dept 2010], lv denied 16 NY3d 828 [2011]).
Similarly, defendant's argument that the temporal distance between his physical assault and the ensuing delivery of money by victim A demonstrates a lack of intent is without merit. Ultimately, defendant's menacing conduct continued well after the final blow as he remained outside the window where the encounter began, while in possession of both victims' phones, and continued insisting that he be paid. Furthermore, after victim A offered defendant a sum of money, defendant insisted on a larger payment and aggressively moved toward victim A, which provided evidence that defendant was threatening to continue to use violent force if victim A offered any resistance to giving him money (see People v Williams, 122 AD3d 502, 503 [1st Dept 2014], lv denied 25 NY3d 954 [2015]). Thus, even accepting that the jury could theoretically have determined that defendant's intent and victim A relinquishing the money were disconnected, considering the direct video and audio evidence presented to the jury and the jury crediting the victims' accounts, we find no basis to upset the verdict on defendant's weight challenge (see People v Stansberry, 224 AD3d 1089, 1091 [3d Dept 2024], lv denied 42 NY3d 930 [2024]; People v Jones, 202 AD3d 1285, 1289 [3d Dept 2022]; People v Curry, 152 AD3d 818, 820-821 [3d Dept 2017], lv denied 30 NY3d 948 [2017]; People v Parker, 127 AD3d 1425, 1428 [3d Dept 2015]).
Defendant next contends that the People made an inflammatory statement during summation in violation of County Court's Molineux ruling, which caused the jury to draw improper and prejudicial conclusions and ultimately denied him a fair trial. Specifically, defendant argues that the People's statement insinuating that defendant had collected protection money from the prior store owner was unsupported by any evidence and highly prejudicial. "Reversal based on prosecutorial misconduct is warranted if the misconduct is such that the defendant suffered substantial prejudice, resulting in a denial of due process. That determination hinges upon the severity and frequency of the [*7]conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (People v Mayette, 233 AD3d 1097, 1102 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 945 [2025]; see People v Gertz, 204 AD3d 1166, 1171 [3d Dept 2022], lv denied 38 NY3d 1070 [2022]; cf. People v Varno, 239 AD3d 1149, 1152 [3d Dept 2025], lv denied 44 NY3d 984 [2025]).
During the People's summation, the prosecutor stated that "[victim A] told [the jury] he wasn't going to pay the defendant. That's what he told him on September 10th of 2020. He wasn't going to pay him like maybe the previous owner did." That statement was improper, as it was suggestive as to the reason that defendant came to the store and confronted victim A. Nevertheless, "not every improper comment made by the prosecuting attorney during the course of closing arguments warrants reversal of the underlying conviction" (People v Birch, 228 AD3d 991, 992-993 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 969 [2024]; see People v Lall, 223 AD3d 1098, 1109 [3d Dept 2024], lv denied 41 NY3d 984 [2024]). Here, defendant's motivation for seeking payment from the victims is not dispositive with respect to his forcible taking. On that, there is abundant evidence in the form of video footage depicting defendant's use of force in order to compel the victims to pay him. Moreover, County Court provided an initial instruction that summations are not evidence and, in response to defendant's objection, provided a clear and appropriate curative instruction, thereby ameliorating any prejudice stemming therefrom (see People v Varno, 239 AD3d at 1152; People v Meyers, 233 AD3d 1266, 1268 [3d Dept 2024], lv denied 43 NY3d 931 [2025]; People v Johnson, 176 AD3d 1392, 1396 [3d Dept 2019], lv denied 34 NY3d 1129 [2020]). Under these circumstances we find that the prosecutor's singular remark was not so flagrant or pervasive so as to deprive defendant of a fair trial (see People v Meyers, 233 AD3d at 1268; People v Johnson, 176 AD3d at 1396).
Defendant next contends that County Court committed reversible error by denying his request to charge a justification defense. "A justification charge must be given if there is any reasonable view of the evidence, when it is considered in the light most favorable to the defendant, that would allow the jury to conclude that the defendant's actions were justified" (People v Saylor, 173 AD3d 1489, 1492-1493 [3d Dept 2019] [internal quotation marks and citations omitted]; see People v Mousaw, 233 AD3d 1383, 1384 [3d Dept 2024], lv denied 43 NY3d 1010 [2025]). "With respect to the defense of justification for the use of ordinary physical force, unless the defendant is the initial aggressor, he or she may use physical force upon another person when and to the extent he or she reasonably believes [*8]such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (People v Brooks, 233 AD3d 1358, 1359 [3d Dept 2024] [internal quotation marks and citations omitted]; see Penal Law § 35.15 [1]; People v Wilder, 200 AD3d at 1304).
The security footage demonstrates that defendant entered the section of the store demarcated for employees only and aggressively confronted the victims. In doing so, defendant initiated physical contact with victim A by slapping his phone out of his hands when he tried to call 911. The video then shows, in response to defendant's actions, victim A pick up a stepstool and, without swinging it at defendant, hold it back before placing it in between defendant and himself. Defendant then struck the stepstool into victim A's face before proceeding to punch both victims multiple times until both were on the floor. After victim A got up without the stepstool, defendant again struck him multiple times, intensifying his assault when victim B attempted to call 911. Even when viewed in a light most favorable to defendant there is no reasonable view of such evidence that would warrant a justification charge, as the video footage readily demonstrates that defendant was the initial aggressor during the encounter (see Penal Law § 35.15 [1] [a], [b]; People v Terry, 240 AD3d 1128, 1131-1132 [3d Dept 2025], lv denied 44 NY3d 995 [2025]; People v Saylor, 173 AD3d at 1493; People v Cotsifas, 100 AD3d 1015, 1015 [2d Dept 2012], lv denied 21 NY3d 1014 [2013]; People v Quiller, 27 Misc 3d 79, 81 [App Term 2010], lv denied 15 NY3d 955 [2010]; see also People v Almonte, 245 AD3d 655, 656 [1st Dept 2026]; compare People v Powell, 101 AD3d 1369, 1371-1373 [3d Dept 2012], lv denied 21 NY3d 1019 [2013]). Moreover, defendant never withdrew from the encounter after that point and, to the contrary, renewed his physical attack multiple times after victim A was no longer in possession of the stepstool (see Penal Law § 35.15 [1] [b]; see also People v Almonte, 245 AD3d at 656; People v Reinfurt, 241 AD3d at 1024). Accordingly, we find that County Court properly denied defendant's request to provide a justification charge to the jury.
Defendant's final argument on his direct appeal asserts that his sentence is unduly harsh and excessive and, to that end, he asks that we modify it in the interest of justice (see CPL 470.15 [6] [b]). Considering defendant's lengthy criminal history,FN3 the brutal nature of the conduct he engaged in and the fact that he received a term of incarceration that falls on the low end of the permissible range (see Penal Law §§ 70.02 [1] [b]; [3] [b]; 70.45 [2] [f]; 160.10), we decline his request to modify his sentence (see People v Dorvil, 234 AD3d 1106, 1117 [3d Dept 2025], lv denied 44 NY3d 982 [2025]; People v Williams, 232 AD3d 1124, 1126 [3d Dept 2024], lv denied 43 NY3d 1059 [2025]; People v Walker, 190 AD3d [*9]1102, 1105 [3d Dept 2021], lv denied 37 NY3d 961 [2021]).
Turning to defendant's argument that his counsel was ineffective, "his mixed claims are grounded upon matters appearing both on the record and outside the record and, therefore, they are assessed together, in totality, to determine whether he was deprived of meaningful representation" (People v Dorvil, 234 AD3d at 1117 [internal quotation marks and citations omitted]). Defendant contends that County Court abused its discretion in denying his CPL 440.10 motion without a hearing. "On a motion to vacate a judgment of conviction under CPL 440.10, a hearing is only required if the submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief. Furthermore, a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence" (People v Dunbar, 218 AD3d 931, 933-934 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 950 [2023]; accord People v Johnson, 221 AD3d 1172, 1175-1176 [3d Dept 2023], lv denied 41 NY3d 965 [2024]).
Acknowledging that he failed to secure an affidavit in support of his motion from trial counsel, defendant asserts that his failure to do so was based upon his assessment that trial counsel's account "so differed" from defendant's that it would not be helpful to his motion. That assertion falls short of a reasonable explanation that would excuse his failure to provide said affidavit (see People v Brown, 220 AD3d 1015, 1016-1017 [3d Dept 2023], lv denied 40 NY3d 1091 [2024]; People v Durham, 195 AD3d 1318, 1321 [3d Dept 2021], lv denied 37 NY3d 1160 [2022]; see also People v Wright, 27 NY3d 516, 522 [2016]; compare People v Mower, 242 AD3d 1377, 1380 [3d Dept 2025]). Accordingly, the sum of his arguments premised on trial counsel's purported failure to advise of a plea offer, his sentencing exposure and his ability to testify on his own behalf, were properly denied without a hearing as they were either contrary to the record or supported by nothing beyond self-serving affidavits from himself or interested parties (see People v Roque, 234 AD3d 1050, 1054 [3d Dept 2025], lv denied 43 NY3d 946 [2025]; People v Clark, 231 AD3d 1291, 1295 [3d Dept 2024], lv denied 43 NY3d 943 [2025]; People v Hooker, 230 AD3d 1465, 1469-1470 [3d Dept 2024]).
Finally, as to defendant's record-based claim regarding the decision to not call a witness to testify that victim A had hired defendant to paint his store, the proof submitted fails to demonstrate a lack of any strategic explanation for not calling said witness, particularly when trial counsel expressly advised County Court during trial that the decision was strategic. Moreover, the affidavit of that witness suggests that the testimony would be largely cumulative to another witness who indicated that defendant had painted the store, and the record [*10]reflects that the proposed witness may have had an outstanding warrant (see People v Dorvil, 234 AD3d at 1118). Further, without an affidavit from trial counsel explaining the strategic reasons for declining to call the witness, defendant's submission offers nothing that would cast doubt on that decision (see People v Marryshow, 235 AD3d 1172, 1174 [3d Dept 2025]). Ultimately, counsel was presented with the exceedingly difficult task of preparing a defense in the face of compelling video evidence capturing defendant's vicious attack on the victims. Accordingly, having assessed "the evidence, the law, and the circumstances of [this] particular case, viewed in totality and as of the time of the representation," we find that trial counsel's representation was meaningful (People v Calafell, 211 AD3d 1114, 1120 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 1077 [2023]; see People v Kellum, 233 AD3d 1374, 1381 [3d Dept 2024], lv denied 44 NY3d 983 [2025]; People v White-Span, 182 AD3d 909, 916 [3d Dept 2020], lv denied 35 NY3d 1071 [2020]). Defendant's remaining contentions that are otherwise not explicitly addressed herein have been considered and found unavailing.
Pritzker, J.P., Ceresia, Fisher and Corcoran, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1
Defendant argues that, in the event this Court remits for a new trial on any basis, count 4 must be dismissed based upon legally insufficient evidence presented to the grand jury premised on the same argument he raises with respect to the trial verdict. However, "[b]ecause [defendant's] conviction[ ] [is] supported by legally sufficient trial evidence, defendant's challenge[ ] to the legal sufficiency of the evidence presented to the grand jury . . . [is] precluded" (People v Flower, 173 AD3d 1449, 1454 n [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 931 [2019]; see People v Sutton, 174 AD3d 1052, 1054 [3d Dept 2019], lv denied 34 NY3d 954 [2019]).

Footnote 2
We note that on appeal defendant does not dispute that victim A suffered a physical injury during the encounter that would satisfy the requirement of Penal Law § 160.10 (2) (a).

Footnote 3
We note that, despite the fact that he was previously convicted of a felony, the People did not file a predicate felony statement or request that defendant be adjudicated as a second felony offender, and County Court did not sentence defendant as a second felony offender.