People v Cassell

2026 NY Slip Op 02173

April 9, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Troy D. Cassell Jr., Appellant.

Decided and Entered:April 9, 2026

CR-24-1410

Calendar Date: February 9, 2026

Before: Clark, J.P., Reynolds Fitzgerald, Ceresia, Powers And Corcoran, JJ.

John B. Casey, Albany, for appellant.

Brett R. Eby, District Attorney, Ballston Spa (William G. Berger of counsel), for respondent.

[*1]

Corcoran, J.

Appeal from a judgment of the County Court of Saratoga County (James Murphy III, J.), rendered November 3, 2022, upon a verdict convicting defendant of the crimes of aggravated driving while intoxicated with a child, driving while ability impaired by drugs, aggravated unlicensed operation of a motor vehicle in the third degree and endangering the welfare of a child.

On September 12, 2021, defendant was driving with his six-year-old child as a passenger when his vehicle left the roadway and overturned into a ditch. Defendant was charged by indictment with aggravated driving while intoxicated with a child (see Vehicle and Traffic Law § 1192 [2-a] [b]), driving while ability impaired by drugs (see Vehicle and Traffic Law § 1192 [4]), aggravated unlicensed operation of a motor vehicle in the third degree (see Vehicle and Traffic Law § 511 [1] [a]) and endangering the welfare of a child (Penal Law § 260.10 [1]). Following a jury trial, defendant was convicted as charged. County Court (Murphy III, J.) sentenced him to an indeterminate prison term of 1⅓ to 4 years upon his conviction of aggravated driving while intoxicated with a child, one year in jail upon his convictions of driving while ability impaired by drugs and endangering the welfare of a child and 30 days in jail upon his conviction of aggravated unlicensed operation of a motor vehicle in the third degree; all sentences ran concurrently. County Court also imposed a period of conditional discharge, revoked defendant's license for one year and directed that he install and maintain an ignition interlock device on his vehicle. Defendant appeals.

Defendant first contends that the evidence is legally insufficient to support his conviction for aggravated unlicensed operation of a motor vehicle in the third degree and that the verdict as to all counts is against the weight of the evidence. We disagree. When reviewing a legal sufficiency claim, this Court must "view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Fragassi, 178 AD3d 1153, 1154 [3d Dept 2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1128 [2020]). "In contrast, a weight of the evidence analysis requires us to first determine, based on all of the credible evidence, whether a different result would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (id. [internal quotation marks and citations omitted]; see People v Ambrosio, 235 AD3d 1181, 1182-1183 [3d Dept 2025], affd ___ NY3d ___, 2026 [*2]NY Slip Op 00824 [2026]).

As relevant here, a person is guilty of driving while ability impaired by drugs when he or she operates a motor vehicle while the person's ability to operate such motor vehicle is impaired by the use of a drug (see Vehicle and Traffic Law § 1192 [4]). A person is guilty of aggravated driving while intoxicated with a child when he or she violates Vehicle and Traffic Law § 1192 (4) while a child who is 15 years of age or less is a passenger in such motor vehicle (see Vehicle and Traffic Law § 1192 [2-a] [b]). A person is guilty of aggravated unlicensed operation of a motor vehicle in the third degree when he or she operates a motor vehicle upon a public highway while knowing or having reason to know that his or her license or privilege of operating a motor vehicle in this state is suspended, revoked or otherwise withdrawn (see Vehicle and Traffic Law § 511 [1] [a]). Finally, a person is guilty of endangering the welfare of a child when he or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than 17 years old (see Penal Law § 260.10 [1]).

The testimony at trial established that a paramedic returning to his station came upon defendant's vehicle in a ditch on September 12, 2021. The paramedic testified that defendant and his daughter were still inside the vehicle and that defendant appeared confused. While speaking with defendant later in the ambulance, the paramedic observed that defendant repeatedly nodded off, appeared drowsy and had difficulty staying alert. According to the paramedic, defendant periodically leaned from side to side, unable to stay fully awake during the encounter. Defendant gave the paramedic inconsistent or mistaken information, including the wrong date of birth for his daughter.

A state trooper responded to the scene and conducted the primary investigation, most of which was memorialized on body-worn camera footage. According to the trooper, defendant spoke slowly and appeared disoriented. Defendant again gave inconsistent or mistaken information, including the wrong date of birth for his daughter, and he struggled to answer basic questions like the date and time. The trooper asked defendant about the status of his driver's license. According to the trooper's testimony and body-worn camera footage admitted into evidence, defendant initially responded that he had "taken care of" his traffic tickets and believed that his license was no longer suspended. Later in the encounter, however, defendant stated that he attempted to address an outstanding infraction the day before the accident but was unable to do so because the relevant town court office was closed. Defendant's driving abstract, which was received in evidence, revealed that his license had been subject to multiple suspensions. Some suspensions had been cleared shortly before the accident, but the abstract reflected one extant suspension when defendant operated the vehicle.

During the [*3]roadside investigation, defendant stated that he was prescribed Suboxone but vacillated about when he last ingested the medication. Initially he claimed that he had taken it the previous morning but later stated that he had taken the last dose earlier that day. Based upon defendant's lethargic demeanor, slow speech and his admission that he had taken prescription medication that day, the trooper administered standardized field sobriety tests. Defendant had difficulty following instructions and required repeated clarification. For instance, during the horizontal gaze nystagmus test, defendant failed to keep his head still and appeared unfocused. During the walk-and-turn and one-leg stand tests, defendant exhibited poor balance and coordination. Defendant stared blankly at times, his eyes appeared droopy and he continued to nod off intermittently.

After defendant was placed under arrest and transported to the State Police barracks, he promptly and unequivocally invoked his right to counsel. The trooper testified that he advised defendant about his chemical test rights and obligations and that defendant debated whether he would submit to testing, ultimately refusing to provide a blood sample. Evidence of defendant's refusal was admitted at trial.

A State Police sergeant trained and certified as a drug recognition expert (hereinafter DRE) conducted and recorded a drug recognition evaluation at the barracks. The DRE detailed at trial his twelve-step evaluation process and his observations of defendant. During the evaluation, defendant's pupils were constricted, his eyelids drooped, his coordination was poor and he swayed while standing. Defendant stated that he was prescribed buprenorphine, which he sometimes called Suboxone and other times called Subutex. The DRE concluded that defendant was impaired by a narcotic analgesic and unable to safely operate a motor vehicle.

Defendant testified and offered an alternative explanation for his condition and appearance. Specifically, he claimed that he was tired, stressed and confused following the accident; he had worked a long day, eaten very little and missed his evening dose of medication. Defendant believed his license was valid because he had recently paid the outstanding tickets that prompted his earlier suspension and had not received notice of an additional suspension.

Turning first to his legal sufficiency challenge, defendant argues that the People failed to establish that he knew or had reason to know that his license was suspended. The driving abstract admitted into evidence reflected that defendant's license had been subject to multiple suspensions, several of which had been recently cleared, but one suspension remained in effect on the date of the accident. Defendant first claimed that he had "taken care of" his tickets and thought his license was valid. However, he later conceded that he unsuccessfully attempted to resolve an outstanding infraction in the Town of Greenwich, Washington County [*4]on the day before the accident because the town court office was closed. From this evidence, the jury could reasonably infer that defendant knew or had reason to know that his privilege to operate a motor vehicle was suspended at the time he drove. Accordingly, defendant's conviction for aggravated unlicensed operation of a motor vehicle in the third degree is supported by legally sufficient evidence.

Next, we address defendant's contention that each guilty verdict is against the weight of the evidence. As for the conviction for aggravated unlicensed operation of a motor vehicle in the third degree, a different verdict would not have been unreasonable had the jury credited defendant's belief that his license was valid. Nevertheless, viewing the evidence in a neutral light and according deference to the jury's credibility determinations, the same proof that established the existence of an active suspension, together with defendant's acknowledgment of recent efforts to address an unresolved suspension, supports the jury's finding that defendant knew or had reason to know that his license was suspended.

Likewise, different verdicts on the counts which turned on whether defendant was impaired by a drug while operating the vehicle would not have been unreasonable if the jury credited defendant's explanation that his presentation and conduct were attributable to fatigue, stress and the shock of the accident. However, the testimony of the paramedic, the responding trooper and the DRE, together with the body-worn camera footage depicting defendant's demeanor and evaluation, provided a basis for the jury to conclude that defendant was impaired within the meaning of Vehicle and Traffic Law § 1192 (4). As for the conviction for endangering the welfare of a child, the jury's verdict was supported by evidence that defendant's six-year-old daughter was riding in the vehicle with him and the DRE's conclusion that defendant was unable to safely operate a motor vehicle (see People v Fragassi, 178 AD3d at 1154-1155). Viewing the evidence in a neutral light and according appropriate deference to the jury's credibility determinations, we find that the verdict as to all counts is supported by the weight of the evidence (see People v Shirley, 209 AD3d 1272, 1274 [4th Dept 2022], lv denied 39 NY3d 964 [2022]; People v Fragassi, 178 AD3d at 1155-1156).

We next address defendant's argument that County Court erred in allowing his postinvocation statements to be introduced at trial. County Court properly admitted defendant's responses to routine booking questions, as well as spontaneous statements made before and after the drug recognition evaluation, which were not the product of interrogation or inducement (see People v Higgins, 124 AD3d 929, 932 [3d Dept 2015]). "An individual suspected of driving while intoxicated is allowed a limited right to counsel for the purpose of deciding whether to submit to a chemical test" (id. at 933 [citations omitted]). Because defendant [*5]made a broad and general request for counsel, rather than a specific request for advice on whether to submit to chemical testing, County Court properly declined to suppress the fact that he refused to submit to chemical testing (see id. at 933-934).

Turning to defendant's claim that County Court erred by empaneling an anonymous jury, we agree with defendant that County Court's unexplained decision to withhold the names of the jurors entitles him to a new trial. Here, prospective and sworn jurors were identified by their assigned juror number and not by their names.FN1 The People concede, and we agree, that County Court violated CPL 270.15, which requires that prospective jurors be called by name during jury selection (see People v Flores, 32 NY3d 1087, 1088 [2018]; People v Tenace, 229 AD3d 908, 911 [3d Dept 2024]; People v Heidrich, 226 AD3d 1096, 1098 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; see also CPL 270.15 [1]). Because the statutory violation is not a mode of proceedings error, it is subject to the preservation requirement (see People v Goberdhan, 241 AD3d 992, 1000 [3d Dept 2025], lv denied 44 NY3d 1011 [2025]). Notwithstanding defendant's failure to preserve this claim, we may exercise our discretion and reverse in the interest of justice (see CPL 470.15 [6] [a]). When deciding whether to exercise that discretion, we consider the totality of the circumstances, including the nature of the statutory violation, the explanation offered by the trial court and the potential for prejudice to the defendant (see People v Tenace, 229 AD3d at 912; People v Flores, 153 AD3d 182, 191-193 [2d Dept 2017], affd 32 NY3d 1087 [2018]).

Here, prospective jurors were identified only by numbers and the record is devoid of proof that their names were ever provided to defendant, which materially heightens the risk of prejudice (see People v Flores, 153 AD3d at 191-192; compare People v Goberdhan, 241 AD3d at 1000). Additionally, County Court withheld prospective jurors' names without making any findings on the record or articulating a case-specific justification for departing from the procedure mandated by CPL 270.15, explaining only that prospective juror identities were withheld "because of confidentiality." The record does not reflect any concern regarding juror safety, intimidation or interference, nor any circumstances that would otherwise warrant the use of an anonymous jury (see People v Flores, 32 NY3d at 1088; People v Heidrich, 226 AD3d at 1099). Additionally, we are not persuaded by any of the reasons suggested by the People at oral argument. We thus exercise our interest of justice jurisdiction, reverse and remit for a new trial.

Although this disposition renders academic many of defendant's remaining contentions, including his claim that County Court denied him the right to meaningfully participate in the Sandoval hearing, we address certain remaining issues in anticipation of a new trial.

Defendant contends that County Court erred in denying [*6]his motion to suppress the body-worn camera footage depicting the drug recognition evaluation, the results of the drug recognition evaluation and related opinion testimony, all purportedly obtained after he invoked his right to counsel. In his omnibus motion, defendant sought a hearing to suppress the body-worn camera footage of the drug recognition evaluation based on a violation of his right to counsel. The People consented to a Huntley hearing but County Court denied defendant's request for a Mapp/Dunaway hearing, concluding that he had not set forth a factual basis for such hearing (see CPL 710.60 [3]; People v Ibarguen,37 NY3d 1107, 1109 [2021], cert denied __ US __, 142 S Ct 2650 [2022]). At the conclusion of the Huntley hearing, defendant orally renewed his application to suppress video footage of the drug recognition evaluation and related opinions, citing the facts adduced at the hearing that ultimately justified suppression of his statements. However, County Court (Lorman, J.) never determined this oral motion. Where a defendant has made a pretrial motion to suppress evidence, "the trial may not be commenced until determination of the motion" (CPL 710.40 [3]) and, "[r]egardless of whether a hearing was conducted, the court, upon determining the motion, must set forth on the record its findings of fact, its conclusions of law and the reasons for its determination" (CPL 710.60 [6]). Accordingly, on remittal, County Court must address the admissibility of evidence related to the DRE (see People v Green, 141 AD3d 746, 747 [3d Dept 2016]).

With respect to arguments about the proper jury instruction for a violation of Vehicle and Traffic Law § 1192 (4), the Court of Appeals recently clarified that the impairment standard requires proof that a defendant's physical or mental abilities were actually impaired to any extent, not proof that the defendant was intoxicated or incapable of driving (see People v Dondorfer, ___ NY3d ___, ___, 2026 NY Slip Op 00823, *1 [2026]). County Court's (Murphy III, J.) charge therefore accurately stated the proper instruction. Finally, as the People concede, the sentencing condition requiring defendant to install an ignition interlock device was illegal, as an alcohol-related offense was not an essential element of any conviction here (see People v Miller, 191 AD3d 802, 803 [2d Dept 2021]; People v Levy, 91 AD3d 793, 794 [2d Dept 2012], lv denied 18 NY3d 995 [2012]; see also Vehicle and Traffic Law § 1193 [1] [a]; Penal Law § 60.01 [2] [a] [i]).

Clark, J.P., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.

ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to the County Court of Saratoga County for a new trial.

Footnotes

Footnote 1: Courts have used the term "anonymous jury" to describe several circumstances involving the nondisclosure of juror information. Here, County Court unilaterally empaneled an "innominate" or "numbers" jury, in which jurors are referred to by number rather than by name (see People v Flores, 153 AD3d 182, 189-190 [2d Dept 2017], affd 32 NY3d 1087 [2018]).