People v Whitbeck

2026 NY Slip Op 02305

April 16, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Robert F. Whitbeck Jr., Appellant.

Decided and Entered:April 16, 2026

CR-25-0050

Calendar Date: February 10, 2026

Before: Clark, J.P., Aarons, Pritzker, Mcshan And Corcoran, JJ.

Todd G. Monahan, Schenectady, for appellant.

Christopher Luhr, District Attorney, Howes Cave (Stephen C. Goble of counsel), for respondent.

[*1]

Corcoran, J.

Appeal from a judgment of the County Court of Schoharie County (Ryan McAllister, J.), rendered August 19, 2024, upon a verdict convicting defendant of the crimes rape in the third degree, criminal sexual act in the first degree, attempted rape in the first degree, criminal obstruction of breathing or blood circulation, unlawful imprisonment in the second degree and criminal contempt in the second degree (10 counts).

Defendant was charged by indictment with rape in the third degree, rape in the first degree, criminal sexual act in the first degree, attempted rape in the first degree, criminal obstruction of breathing or blood circulation, unlawful imprisonment in the second degree and 10 counts of criminal contempt in the second degree.FN1 Following a jury trial, defendant was acquitted of rape in the first degree and convicted of the remaining charges. County Court sentenced defendant to a determinate term of 18 years of incarceration, to be followed by 20 years of postrelease supervision, upon his conviction of criminal sexual act in the first degree; a determinate term of 12 years of incarceration, to be followed by 15 years of postrelease supervision, upon his conviction of attempted rape in the first degree; and a determinate term of four years of incarceration, to be followed by 10 years of postrelease supervision, upon his conviction of rape in the third degree. Defendant was further sentenced to one-year terms of incarceration on each of the remaining misdemeanor convictions, with all sentences to run concurrently. Defendant appeals, and we affirm.

The indictment alleged that defendant committed multiple sex offenses against the victim on November 19 or 20, 2022, and again on December 4, 2022. Defendant first contends that the verdict is against the weight of the evidence, that the victim's testimony was incredible as a matter of law and that he presented "airtight alibi[ ]" evidence for the relevant dates. We disagree. When conducting a weight of the evidence review, we must "view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of the evidence supports the verdict" (People v Benton, 243 AD3d 1118, 1119 [3d Dept 2025] [internal quotation marks and citations omitted]). As charged here, criminal sexual act in the first degree requires proof that a person engaged in oral sexual conduct, meaning contact between the mouth and the vulva, with another person by forcible compulsion (see Penal Law former § 130.50 [1]; Penal Law § 130.00 [former (2) (a)]). A person is guilty of rape in the third degree when he or she engages in sexual intercourse with another person without that person's consent (see Penal Law § 130.25 [former (3)]). Attempted rape in the first [*2]degree requires proof that, with intent to commit rape in the first degree, a person engaged in conduct tending to effect the commission of that crime by forcible compulsion (see Penal Law §§ 110.00, 130.35 [former (1)]). Criminal obstruction of breathing or blood circulation requires proof that a person applied pressure to another person's throat or blocked that person's nose or mouth, thereby impeding normal breathing or blood circulation (see Penal Law § 121.11). A person is guilty of unlawful imprisonment in the second degree when he or she restrains another person (see Penal Law § 135.05).

The trial established that the parties lived together in a residence owned by the victim until they separated in October 2022. Defendant then relocated to his own apartment but left some personal property at the victim's home. According to the victim, defendant contacted her in November 2022, asking to retrieve his remaining property. She agreed to meet him at her home and, once inside a detached garage, defendant attempted to hug her. When she refused, defendant shoved the victim's head into a cabinet, forced her pants down and engaged in nonconsensual vaginal intercourse with her. On cross-examination, the victim acknowledged that she could not conclusively state whether the incident occurred on November 19 or November 20, 2022 and that she neither immediately reported the incident to law enforcement nor sought medical treatment.

Defendant's workplace manager described the company's time-keeping system and cited a timecard showing that he clocked in at 7:46 a.m. on November 19, 2022 and clocked out at 3:17 p.m., though she did not personally see him. Defendant testified that he was at work on November 19, 2022 and did not go to the victim's residence. Defendant claimed that he also went to work on November 20, 2022, although it was his day off; he offered no corresponding documentary evidence to support an alibi for this date.

In the following weeks, the parties communicated about defendant's remaining property. They agreed that the victim would bring additional items to defendant's apartment at approximately 6:00 p.m. on December 4, 2022. The victim testified that she went alone because she did not want any witnesses if defendant became angry or attempted to initiate sexual contact. After the victim entered the apartment, defendant became aggressive, pushed her onto a bed and attempted to force vaginal intercourse. When she screamed, defendant placed a pillow over her face, put his hands around her neck and engaged in forced sexual contact with her. The victim left defendant's apartment immediately thereafter. The victim's daughter testified that on the evening of December 4, 2022, she observed that the victim was crying and upset, there were marks around her neck, her hair and face appeared disheveled and her shirt was torn. On cross-examination, the victim acknowledged that she continued to communicate with defendant after the assaults.

Turning to defendant's [*3]alibi defense for this incident, defendant's two adult daughters and their romantic partners testified that defendant spent December 4, 2022 at one daughter's residence in another county celebrating his birthday. All four witnesses saw defendant socializing with relatives, eating and remaining at the residence throughout the celebration. Defendant also introduced photographs purportedly depicting him at the gathering that day, when the People claimed he was assaulting the victim in his own apartment. Defendant testified that he arrived at his daughter's house between 10:00 a.m. and 10:30 a.m. and left between 6:00 p.m. and 6:30 p.m., and he denied that the victim came to his apartment that day.

The prosecution argued that defendant made several admissions to the victim. Specifically, the People introduced defendant's text messages to the victim between December 2022 and early January 2023, in which he stated, among other things, that he was "sorry" for his conduct and that he "wish[ed] he could take it all back." In one message, he asked the victim not to report him to the police. Several months later, in early June 2023, defendant sent the victim an electronic message stating, "[y]es I raped you and [assaulted] you and I am sorry and greatly ashamed of what I have done." A State Police investigator who interviewed defendant testified that defendant admitted authoring these messages but denied assaulting the victim.

A different verdict would not have been unreasonable if the jury had credited defendant's alibi evidence or rejected the victim's account. Nevertheless, viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we conclude that the verdict is not against the weight of the evidence (see People v Hoffman, 244 AD3d 1588, 1595 [3d Dept 2025]; People v Cruz, 238 AD3d 1327, 1330-1331 [3d Dept 2025], lv denied 43 NY3d 1054 [2025]). Defendant principally challenged the victim's credibility, emphasizing her delayed disclosure, her continued communication with him and her decision to go alone to his apartment on December 4, 2022, despite her allegation that he had recently raped her. Those contentions, as well as any arguable inconsistencies in her account, were thoroughly explored at trial and the jury evidently credited the victim's testimony (see People v Hoffman, 244 AD3d at 1595; People v Kane, 232 AD3d 1064, 1065 [3d Dept 2024]).FN2 The jury also considered expert testimony explaining why victims may delay reporting abuse or express uncertainty about specific details. The jury was entitled to assess whether defendant's work records and family members' testimony persuasively established his alibi and whether to accept or reject his claim that the victim fabricated the allegations (see People v George, 242 AD3d 1447, 1451 [3d Dept 2025]; People v Deas, 236 AD3d 1105, 1108 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). Ultimately, the conflicting testimony presented a classic credibility determination [*4]for the jury to resolve (see People v Robbins, 236 AD3d 1097, 1100 [3d Dept 2025]; People v Muniz, 93 AD3d 871, 874 [3d Dept 2012], lv denied 19 NY3d 965 [2012]). Given the victim's testimony, her daughter's corroborating observations and the text messages in which defendant seemingly made material admissions, the verdict is supported by the weight of the evidence (see People v Christie, 224 AD3d 1097, 1100 [3d Dept 2024]).

Defendant next contends that he was deprived of a fair trial, claiming that the victim's daughter and the social worker improperly bolstered the victim's credibility, the social worker and the State Police investigator offered improper opinions, and County Court should have conducted a voir dire of the jury after observing the victim become upset in the gallery. These claims are unpreserved for appellate review, as defendant failed to raise timely and specific objections at trial (see People v Goberdhan, 241 AD3d 992, 998 [3d Dept 2025], lv denied 44 NY3d 1011 [2025]; CPL 470.05 [2]).

Finally, we reject defendant's contention that he was denied the effective assistance of counsel. To prevail on such a claim, a defendant must demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings (see People v Clark, 244 AD3d 1613, 1615 [3d Dept 2025]; People v Rickett, 244 AD3d 1284, 1288 [3d Dept 2025], lv denied ___ NY3d ___ [Feb. 19, 2026]; People v Thibeault, 244 AD3d 1320, 1322 [3d Dept 2025]). A claim of ineffective assistance fails where the evidence, the law and the circumstances of the case, viewed in totality and as of the time of the representation, reveal that counsel provided meaningful representation (see People v Rivera, 212 AD3d 942, 948 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]).

Here, the record belies defendant's assertion that trial counsel failed to renew the motion for a trial order of dismissal; counsel expressly renewed the motion at the close of all proof. To the extent defendant argues that the motion for a trial order of dismissal was perfunctory or lacked sufficient detail regarding the alibi evidence, that evidence did not conclusively refute the People's case and any such arguments would have had little likelihood of success (see Matter of Lucas Y., 223 AD3d 1057, 1060 [3d Dept 2024], lv denied 41 NY3d 909 [2024]; People v Rivera, 212 AD3d at 949; People v Barzee, 190 AD3d 1016, 1021 [3d Dept 2021], lv denied 36 NY3d 1094 [2021]). Our review of the record demonstrates that counsel presented a cogent defense, vigorously cross-examined witnesses, highlighted credibility issues and the lack of physical evidence and made appropriate motions and objections throughout the proceedings. Viewed in totality, defendant was provided with meaningful representation. We have examined defendant's remaining contentions and find them to be without merit.

Clark, J.P., Aarons, Pritzker and McShan, JJ., concur.

ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The criminal contempt convictions arose from defendant's violations of orders of protection issued for the benefit of the victim and her daughter. Defendant admitted the charged conduct at trial and he does not challenge those convictions on this appeal. Defendant was also initially charged with aggravated sexual abuse in the third degree and forcible touching, but those counts were dismissed on motion by defendant.

Footnote 2: Defendant contends that his acquittal of rape in the first degree arising from the November incident reflects the jury's wholesale rejection of the victim's credibility; this is belied by his conviction of rape in the third degree based on the same incident.