People v Zakrzewski

2026 NY Slip Op 03029

May 14, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,

v

Michael Zakrzewski, Appellant.

Decided and Entered:May 14, 2026

113711

Calendar Date: March 26, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And McShan, JJ.

Paul J. Connolly, Delmar, for appellant.

G. Scott Walling, Special Prosecutor, Slingerlands, for respondent.

[*1]

McShan, J.

Appeal from a judgment of the County Court of Saratoga County (Chad Brown, J.), rendered July 18, 2022, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, strangulation in the second degree (two counts), criminal contempt in the first degree, aggravated family offense (three counts), criminal contempt in the second degree (two counts), tampering with a witness in the fourth degree, assault in the third degree and unlawful imprisonment in the second degree.

Defendant was charged by a 13-count indictment with kidnapping in the second degree, two counts of strangulation in the second degree, criminal contempt in the first degree, four counts of aggravated family offense, two counts of criminal contempt in the second degree, tampering with a witness in the fourth degree, assault in the third degree and unlawful imprisonment in the second degree. Following a six-week jury trial, defendant was convicted of 12 out of the 13 counts — one count of aggravated family offense was dismissed prior to submission to the jury. County Court thereafter sentenced defendant, as a second felony offender, to various concurrent and consecutive prison terms, amounting to an aggregate prison term of 34 years, to be followed by five years of postrelease supervision. Defendant appeals.

We turn first to defendant's arguments challenging the legal sufficiency and weight of the evidence supporting his convictions of numerous counts. Defendant contends that his convictions for second degree strangulation (counts 2 and 3) and assault in the third degree (count 12) were not supported by legally sufficient evidence and were otherwise against the weight of the evidence. At the close of the People's proof, defendant moved for a trial order of dismissal on the relevant basis that the People provided insufficient evidence to establish the strangulation counts based upon the People's failure to prove that the victim ever lost consciousness or suffered any physical injury. Further, he argued that the count of assault in the third degree should have been dismissed due to a lack of evidence establishing a physical injury. County Court (Murphy III, J.) reserved on the motion and ultimately never expressly ruled thereon, which constituted an implicit denial thus rendering defendant's legal sufficiency arguments preserved on these counts (see People v Payne, 3 NY3d 266, 273 [2004]; People v Munise, 222 AD3d 1183, 1184 [3d Dept 2023]).

As to count 4, defendant contends that his conviction for first degree criminal contempt was not supported by legally sufficient evidence and was otherwise against the weight of the evidence because the evidence presented at trial was insufficient to establish that he intended to harass, annoy, threaten or alarm the victim or that there was no legitimate purpose for his contact with her. Defendant further argues that the People failed to establish a physical injury to support his conviction of one count of aggravated [*2]family offense (count 5). However, as the arguments on appeal are different from those made in his dismissal motion at trial, his argument regarding the legal sufficiency of evidence on counts 4 and 5 of the indictment are unpreserved for review (see People v Zeoli, ___ AD3d ___, ___, 2026 NY Slip Op 02171, *1 [3d Dept 2026]; People v Kabia, 190 AD3d 1105, 1106 [3d Dept 2021]). "Nevertheless, in the course of reviewing defendant's weight of the evidence challenge, this Court necessarily evaluates whether all elements of the charged crimes were proven beyond a reasonable doubt" (People v Osman, 228 AD3d 1007, 1008 [3d Dept 2024] [internal quotation marks and citations omitted]; accord People v Marin, 239 AD3d 1028, 1029 [3d Dept 2025]; see People v Alger, 206 AD3d 1049, 1050 [3d Dept 2022], lv denied 38 NY3d 1148 [2022]).

As relevant here, "[a] person is guilty of strangulation in the second degree when he or she commits the crime of criminal obstruction of breathing or blood circulation . . . and thereby causes stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12). "A person is guilty of criminal contempt in the first degree when . . . in violation of a duly served order of protection . . . [and] with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, [he or she] repeatedly makes telephone calls to such person, whether or not a conversation ensues, with no purpose of legitimate communication" (Penal Law § 215.51 [b] [iv]). "A person is guilty of aggravated family offense when he or she commits [assault in the third degree] and he or she has been convicted of one or more specified offenses within the immediately preceding five years" (Penal Law § 240.75 [1]). Finally, "[a] person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person" (Penal Law § 120.00 [1]). A physical injury for purposes of the statutes "means impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). "Substantial pain must be more than slight or trivial but need not be severe or intense, and the determination of whether pain is substantial considers the objective nature of the injury, the victim's subjective experience and whether the victim sought medical treatment" (People v Peasley, 208 AD3d 1466, 1468-1469 [3d Dept 2022] [internal quotation marks, ellipsis and citations omitted], lv denied 39 NY3d 1074 [2023]).

The charges in this case stem from defendant's two-day course of conduct with the victim beginning on the evening of November 30, 2020. According to the victim, at that time she was in a romantic relationship with defendant. The victim testified that she borrowed defendant's car earlier that day and, upon returning to his home after running errands, defendant immediately became enraged at the amount of time she was away [*3]and came "flying at" her, grabbed her by the throat, and threw her against a door. By the victim's account, defendant then proceeded to throw her onto a couch, threatened to kill her, and choked her multiple times until her vision darkened, she experienced "tunnel vision" and "started to blackout." Further, according to the victim, she saw "stars" after defendant slammed her head against various hard surfaces and, although she was unsure whether she fully lost consciousness during the events, she thought she might have because "everything went black."

The victim eventually escaped from defendant's residence and fled to the home of a nearby neighbor. The neighbor testified that the victim appeared frightened and distraught when she arrived, and that she requested a phone to call someone to come get her. However, because the victim did not have her cell phone with her and could not recall her son's number without the contacts stored therein, she returned to defendant's home. After she left, the neighbor's husband called the police to report what had occurred.

Meanwhile, the victim encountered defendant when she returned and told him that the neighbors would call the police if she did not return to their home in 20 minutes. According to the victim, defendant became enraged upon observing that she was going to leave, prompting him to make threats to kill her children and grandchild if she followed through. The victim attempted to flee, and defendant pursued and blocked her in with his vehicle before eventually forcing her into the car and driving her out into the woods. Defendant struck the victim numerous times, pulled her hair, slammed her head against the center console and screamed at her while he drove her further into the woods. After about half an hour, defendant drove them back toward his residence; however, upon observing law enforcement in his driveway, he turned around and drove them back into the woods, where he held the victim overnight. The following morning, the two returned to his residence. Defendant then sat in front of the door to prevent the victim from leaving "for a couple hours at least." When he finally fell asleep, the victim escaped and again fled to the neighbors' home.

This time, the neighbor observed that the victim was dirty, crying and had leaves, dirt and dried blood in her hair. The neighbor testified that she noticed a laceration on the side of the victim's head and marks on her neck, and the victim complained that her throat was "killing her" and that she was struggling to swallow. The neighbor's husband contacted law enforcement again, who arrived alongside paramedics. A paramedic documented a laceration on the top of the victim's head, neck and throat pain, swelling on the right side of the neck, back pain, and red swollen hands, and noted that the injuries were consistent with manual strangulation. The victim was transported to the hospital and treated by a nurse practitioner, who testified that, although CT scans [*4]showed no acute internal injuries, the victim complained of neck pain, difficulty speaking and swallowing and a headache.

Defendant testified in his own defense, denying every allegation of physical abuse, minimizing his relationship with the victim as "[f]riends, if that," and claiming that the victim had taken his car without permission, damaged property and assaulted him over the course of events beginning on November 30, 2020. Defendant also cast doubt on the victim's account of events by characterizing the altercation when she returned home with his vehicle as a "rather lightly heated discussion." Defendant maintained that he had not physically hurt the victim at any point during their argument and that the injury to her head was self-inflicted by the way the victim got into his vehicle. Defendant also called an emergency medicine physician to testify in his defense, who explained that, based on the victim's description of the assault that she endured, he would have expected to see "multiple areas of contusion or swelling along the scalp, and . . . redness, swelling [and] likely . . . the pattern of a hand" on the victim's neck. Further, he posited that the level of force that the victim described "would cause bruising, redness, discoloration, swelling, [and] marked tenderness to palpation."

Turning first to defendant's convictions for strangulation in the second degree, it is abundantly clear that they are supported by legally sufficient evidence. The victim testified that defendant grabbed her around the neck at least two times to the point where she may have lost consciousness. Acknowledging her uncertainty on that issue, the testimony of several of the medical witnesses reinforced that an individual may not know if they ever lost consciousness and that defendant's conduct, as testified to by the victim, could bring about that result. The People also submitted photographic evidence of swelling on the victim's neck, which the paramedic also acknowledged having noticed. Several witnesses, including the neighbors and medical providers, also pointed to the victim's difficulty swallowing and speaking and general reporting of throat and neck pain. In considering all of the evidence, there is a valid line of reasoning which could lead a rational person to the conclusion reached by the jury that the victim either lost consciousness, experienced a state of stupor or suffered any other physical injury as a result of defendant squeezing her neck on two separate occasions and, thus, as a matter of law the People satisfied their proof and burden requirements for every element of the charged crime (see People v Peasley, 208 AD3d at 1470; People v Manigault, 150 AD3d 1331, 1332-1333 [3d Dept 2017], lv denied 29 NY3d 1130 [2017]; People v Ryder, 146 AD3d 1022, 1025 [3d Dept 2017], lv denied 29 NY3d 1086 [2017]). As to his weight of the evidence challenge to his convictions for strangulation in the second degree, although a different verdict could be reasonable [*5]had the jury accepted defendant's account of the events of the evening in question, the jury clearly rejected his telling in favor of the victim's, and we find no reason to depart from that determination (see People v Walker, 190 AD3d 1102, 1104-1105 [3d Dept 2021], lv denied 37 NY3d 961 [2021]; People v Wilkins, 176 AD3d 460, 461 [1st Dept 2019], lv denied 34 NY3d 1134 [2020]; People v Parker, 127 AD3d 1425, 1427 [3d Dept 2015]).FN1

Defendant's argument that his conviction for assault in the third degree is unsupported by legally sufficient evidence is also without merit. That argument, predicated on his assertion that the People failed to prove that the victim suffered a physical injury or an impairment to her physical condition, is dispelled by the victim's testimony describing her pain, as well as the account of the neighbor and medical providers who relayed the victim's reports of pain in her throat and neck prompting difficulty swallowing. All told, there is a valid line of reasoning which could lead a rational person to the conclusion reached by the jury that the victim suffered a physical injury — i.e., an impairment of physical condition or substantial pain — and, thus, as a matter of law the People satisfied their proof and burden requirements for every element of the charged crime (see People v Rudge, 185 AD3d 1214, 1216 [3d Dept 2020], lv denied 35 NY3d 1070 [2020]; People v Bombard, 159 AD3d 1119, 1122 [3d Dept 2018], lv denied 31 NY3d 1145 [2018]; People v Foster, 52 AD3d 957, 960 [3d Dept 2008], lv denied 11 NY3d 788 [2008]; compare People v Mussen, 202 AD3d 1275, 1278 [3d Dept 2022]). Defendant's challenge to the weight of the evidence of his conviction on this count and the aggravated family offense count (count 5), predicated on the same argument with respect to injury and impairment, are equally without merit. Again, a different verdict would be reasonable had the jury's credibility determinations swung in defendant's favor — which they did not. Therefore, according the jury's assessment of credibility the appropriate deference, we are satisfied that the weight of the evidence supports his convictions for aggravated family offense (count 5) and assault in the third degree (see People v Dillon, 231 AD3d 1352, 1355 [3d Dept 2024]; People v Jones, 206 AD3d 1292, 1294 [3d Dept 2022]; People v Ramsoondar, 206 AD3d 1157, 1159-1160 [3d Dept 2022]; People v Wilder, 200 AD3d 1303, 1305-1306 [3d Dept 2021]).

Finally, we reject defendant's contention that his conviction for criminal contempt in the first degree is against the weight of the evidence.FN2 The People introduced evidence at trial that there was a duly issued order of protection against defendant that was served on him in court on December 1, 2020. Defendant — despite acknowledging his understanding that the order prohibited all contact — repeatedly called the victim from jail, amassing 84 calls to one of the victim's numbers, numerous additional calls to a second number between [*6]December 10, 2020 and January 28, 2021, and multiple attempts to contact her through a third party. Several calls were recorded and admitted at trial, including a three-way call on December 27 during which defendant urged the victim to lie and say they were not in a relationship on November 30 so he could avoid an aggravated family offense charge. Defendant acknowledged making the jail calls and admitted he knew they violated the order of protection; however, he maintained that his intent was to get her to tell the truth about what had occurred on the evening in question. The jury had the opportunity to consider defendant's explanation and rejected it in favor of the victim's testimony that the calls made her feel pressured, upset and manipulated (see People v Splunge, 159 AD3d 1136, 1136 [3d Dept 2018]; People v Soler, 52 AD3d 938, 940 [3d Dept 2008], lv denied 11 NY3d 741 [2008]; see generally People v Turner, 207 AD3d 889, 890 [3d Dept 2022], lv denied 38 NY3d 1190 [2022]). Accordingly, it was reasonable for the jury to conclude that defendant's numerous calls to the victim, made with full knowledge of the order of protection in place, were intended to harass, annoy, threaten or alarm the victim and served no legitimate purpose (see People v Turner, 207 AD3d at 890-891; People v Ramsoondar, 206 AD3d at 1159-1160; see generally People v Smith, 210 AD3d 1297, 1298-1300 [3d Dept 2022], lv denied 39 NY3d 1080 [2023]).

We next turn to the myriad of contentions defendant directs toward his speedy trial rights. In sum, defendant argues that County Court erred in denying his motion to dismiss the indictment because the People failed to timely disclose additional discoverable materials and timely file a valid certificate of compliance (hereinafter COC) both at the onset of the case and after later disclosures. His arguments are unavailing. "To be deemed actually ready for trial, the People's readiness declaration must be accompanied or preceded by the filing of a certificate of good faith compliance with disclosure requirements of CPL 245.20, and the presiding court must, after an on-the-record inquiry, be satisfied of the People's actual readiness" (People v Grandoit, 242 AD3d 1298, 1299 [3d Dept 2025] [internal quotation marks and citations omitted]). The People were required to "exercise[ ] due diligence" and act in good faith in "making reasonable inquiries" and efforts to "ascertain the existence of material and information subject to discovery" and then "serve upon the defendant and file with the court a [COC]" (CPL former 245.50 [1]; see People v Grandoit, 242 AD3d at 1299). As relevant here, although "[t]he People have an ongoing duty to expeditiously disclose any CPL 245.20 materials that were previously unknown or not in the People's possession during the automatic disclosure period, . . . a valid [COC] and readiness declaration will not be rendered illusory by subsequent diligent disclosures made in good faith" (People v McCarty, 221 AD3d 1360[*7], 1361-1362 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; accord People v James, 229 AD3d 1008, 1010 [3d Dept 2024]).

After filing their initial COC and statement of trial readiness in April 2021, the People continued to provide defendant with discovery as it was obtained and filed subsequent COCs on September 24, 2021 and December 22, 2021. On December 28, 2021, defendant filed a motion seeking to have his indictment dismissed, contending that the People's COCs were illusory in that they failed to comply with CPL 245.50 and that the People failed to include certain digital uploads in their supplemental COCs. Relevant here, defendant claimed that the People failed to expeditiously file subsequent COCs upon their disclosure of subsequent discovery materials. In response, the People submitted a letter wherein they argued that dismissal was an inappropriate remedy for the belated filing of a supplemental COC. Conceding that fact, the People noted that the relevant certified discovery had been provided to defendant in a timely manner upon the People receiving same. In reply, defendant clarified that he was not asserting that the People had failed to disclose discoverable materials in a timely manner but rather that he was not promptly made aware of such disclosures due to the belated notice of those disclosures through mandatory supplemental COC filings.

Based upon the substance of defendant's arguments and the People's response thereto, we find that County Court's determination that the People had provided valid timely disclosures and, in turn, had exercised due diligence and acted in good faith in complying with their discovery obligations, is supported by the record (see People v Gerhard, 244 AD3d 1313, 1317 [3d Dept 2025], lv denied 45 NY3d 936 [2026]; People v Graham, 233 AD3d 1361, 1366 [3d Dept 2024], lv denied 43 NY3d 944 [2025]). As to defendant's terse complaints regarding the timeliness of certain disclosures, without signifying to the court which uploads were not accounted for in the People's supplemental COCs, County Court could not reasonably determine whether they were indeed missing or otherwise subject to the automatic discovery statute and, correspondingly, whether the uploads even needed to be noticed. Thus, we find no fault in County Court's determination that it could not assess whether the People had violated their discovery obligations with respect to the supplemental COCs provided (see People v Planty, 155 AD3d 1130, 1134 [3d Dept 2017], lv denied 30 NY3d 1118 [2018]; see also People v Drayton, 231 AD3d 1057, 1060 [2d Dept 2024], lv denied 43 NY3d 930 [2025]) and, if so, what an appropriate remedy might be (see People v Bay, 41 NY3d 200, 214 [2023]). Finally, to the extent that defendant asserted arguments before County Court (Brown, J.) about missing discovery in his posttrial CPL 330.30 motion, doing so was improper as an assertion of a speedy trial violation must be made "prior to the commencement of trial" (CPL 210.20[*8][2]; see People v Brown, 217 AD3d 681, 682 [2d Dept 2023], lv denied 40 NY3d 950 [2023]; People v Bond, 110 AD3d 1366, 1366-1367 [3d Dept 2013], lv denied 22 NY3d 1197 [2014]). Accordingly, the arguments he now raises, which are substantively derived from the arguments raised in his CPL 330.30 motion, are unpreserved.

Defendant also contends that County Court (Murphy III, J.) improperly denied various motions derived from the seizure of his cell phone. We disagree. Taking his arguments in turn, defendant contends that County Court erred in denying his application to disqualify the Saratoga County District Attorney's office (hereinafter DA's office) based upon the office providing misleading information to the Town Justice who issued the search warrant pursuant to which the cell phone was seized. However, in order to meet the heavy burden of establishing cause for disqualification of a district attorney, a defendant must "demonstrate actual prejudice or so substantial a risk thereof as could not be ignored" (Matter of Schumer v Holtzman, 60 NY2d 46, 55 [1983]; see Matter of Soares v Herrick, 88 AD3d 148, 152 [3d Dept 2011], affd 20 NY3d 139 [2012]). As "the district attorney is a constitutional officer, chosen by the electors of his or her county to prosecute all crimes and offenses, . . . the exceptional superceder power of disqualification visited upon the courts, and the attendant separation of powers concerns it engenders, should not be expansively interpreted, but rather narrowly constrained" (Matter of Soares v Herrick, 88 AD3d at 153). To be sure, it is clear from the record that the People submitted a sworn statement to Town Court that a prior warrant application had not been made. That was clearly inaccurate, and, in turn, improper, as the People advanced their position before County Court that they were entitled to a search warrant for the cell phone and County Court treated it as such, regardless of the fact that the application was purportedly unsigned.FN3 However, the record also provides relevant context to the DA's decision to pursue the second application, as County Court advised during the hearing on the warrant application that Town Court would have been the more appropriate platform for the People's arguments. It also appears that the People advised Town Court of the prior proceeding in County Court, which suggests that the misstatement was not a deliberate attempt to hide the prior application in order to seek a better ruling from a different judge (see generally People v Bilsky, 95 NY2d 172, 177 [2000]). Moreover, County Court, on reconsideration of defendant's motion to suppress, ultimately precluded either party from introducing evidence at trial derived from the forensic testing of the cell phone. Given that outcome, defendant cannot now demonstrate actual prejudice by the People's conduct and, under those circumstances, we do not believe that the decision to deny disqualification constituted reversible error (see Matter of Schumer [*9]v Holtzman, 60 NY2d at 55; Matter of Soares v Herrick, 88 AD3d at 153; see also Matter of Columbia County Subpoena Duces Tecum Dated Mar. 20, 2013 [Czajka], 118 AD3d 1081, 1083 [3d Dept 2014]).FN4

Defendant's remaining arguments with respect to his cell phone can be addressed swiftly. There was no reversible error in County Court's denial of defendant's demand that the People return his phone to him prior to the end of trial. It is clear from the record that defendant had access to the phone prior to turning it over to the People, during which time he could have obtained any necessary information from it. Moreover, although the data from the cell phone had been suppressed,FN5 the People had obtained the device through a valid warrant and the phone was not wrongfully taken or withheld by them (compare CPL 710.70 [1]). Based upon the People's stated intent to use the cell phone for impeachment purposes, it was properly retained (see People v DeProspero, 20 NY3d 527, 533 [2013]), and it was well within the court's discretion to deny defendant's motion for its return (see CPL 690.55 [1] [b]). Finally, the People indicated that all the information that they used to impeach defendant during cross-examination was provided by him during reciprocal discovery. This claim was never controverted by defendant. In any event, as suppressed evidence can properly be used for impeachment purposes (see People v Brinkley, 174 AD3d 1159, 1164-1165 [3d Dept 2019], lv denied 34 NY3d 979 [2019]; People v Carver, 124 AD3d 1276, 1279 [4th Dept 2015], affd 27 NY3d 418 [2016]; People v Brown, 252 AD2d 598, 600 [3d Dept 1998], lv denied 92 NY2d 923 [1998]), we discern no error in permitting the People to utilize such information during defendant's cross-examination.

Defendant next asserts that the counts for assault in the third degree (count 12) and aggravated family offense (count 5) were duplicitous and, as a result, the corresponding convictions thereof must be reversed. "Even if a count facially charges one criminal act, that count is duplicitous if the evidence makes plain that multiple criminal acts occurred during the relevant time period, rendering it nearly impossible to determine the particular act upon which the jury reached its verdict" (People v Dalton, 27 AD3d 779, 781 [3d Dept 2006] [citations omitted], lvs denied 7 NY3d 754 [2006], 7 NY3d 811 [2006]; accord People v Hilton, 166 AD3d 1316, 1319 [3d Dept 2018], lv denied 32 NY3d 1205 [2019]; see CPL 200.30 [1]). Defendant was indicted for aggravated family offense (count 5) and assault in the third degree (count 12), which essentially alleged that, on the same day, defendant intended to cause the victim injury and did indeed do so, with count 5 including the added stipulation that the victim be a member of defendant's family or household. As recounted at trial, defendant engaged in numerous physical attacks on the victim that occurred off and on over the course of several hours. As any one of those attacks could [*10]have resulted in her physical injury in satisfaction of the statutory requirement, and County Court's jury charge failed to clarify that the jury needed to come to a unanimous conclusion as to which act constituted the requisite act for each count, the counts were duplicitous (see People v Woodley, 201 AD3d 749, 750 [2d Dept 2022], n lv denied 38 NY3d 955 [2022]; People v Quiros, 185 AD3d 1546, 1547 [4th Dept 2020], lv denied 36 NY3d 1053 [2021]; People v Russell, 116 AD3d 1090, 1091 [3d Dept 2014]; compare People v Rosa, 206 AD3d 1253, 1254-1256 [3d Dept 2022], lv denied 39 NY3d 964 [2022]).FN6 Acknowledging that defendant's argument is unpreserved, we grant his request to take corrective action in the interest of justice (see People v Hilton, 166 AD3d at 1319; People v Dunton, 30 AD3d 828, 829 [3d Dept 2006], lv denied 7 NY3d 847 [2006]) and we dismiss counts 5 and 12 with leave to the People to re-present these charges to a new grand jury (see People v McNealy, 230 AD3d 917, 919 [3d Dept 2024], lv denied 42 NY3d 1021 [2024]; cf. People v Levandowski, 8 AD3d 898, 899-900 [3d Dept 2004]).

We turn next to defendant's argument that County Court erred by empaneling an anonymous jury — that is, by referring to prospective jurors "only by numbers and initials, with neither the attorneys nor [the] spectators knowing the jurors' names." On that, the record clearly bears out that County Court improperly empaneled an anonymous jury in clear violation of CPL former 270.15 (see People v Flores, 32 NY3d 1087, 1088 [2018]; People v Tenace, 229 AD3d 908, 911 [3d Dept 2024]; People v Heidrich, 226 AD3d 1096, 1098 [3d Dept 2024], lv denied 42 NY3d 927 [2024]; see also CPL former 270.15 [1-a]).FN7 However, acknowledging that no objection was raised before the trial court, defendant first argues that doing so constituted a mode of proceedings error. As we recently determined on two separate occasions, that contention is without merit (see People v Reinfurt, 241 AD3d 1015, 1021 n 5 [3d Dept 2025], lv denied 44 NY3d 1067 [2026]; People v Goberdhan, 241 AD3d 992, 999 [3d Dept 2025], lv denied 44 NY3d 1011 [2025]). We may nevertheless reach the issue as a matter of our discretion in the interest of justice (see CPL 470.15 [6] [a]). In assessing whether it is appropriate to do so, "we consider the totality of the circumstances, including the nature of the statutory violation, the explanation offered by the trial court and the potential for prejudice to the defendant" (People v Cassell, ___ AD3d ___, ___, 2026 NY Slip Op 02173, *5 [3d Dept 2026]; see People v Goberdhan, 241 AD3d at 998-999; People v Tenace, 229 AD3d at 912).

We agree with defendant's contention that reversal is warranted based upon the totality of the circumstances. Although the empaneling of an anonymous jury may be appropriate under certain limited circumstances, where, as here, there is "no 'factual predicate for the extraordinary procedure,' " to do so was error (People v Heidrich, 226 AD3d at 1099, quoting [*11]People v Flores, 32 NY3d at 1088). Indeed, there is no dispute that County Court failed to provide any rationale for doing so, and "[t]he record does not reflect any concern regarding juror safety, intimidation or interference, nor any circumstances that would otherwise warrant the use of an anonymous jury" (People v Cassell, ___ AD3d at ___, 2026 NY Slip Op 02173, *5). Moreover, unlike those cases where defense counsel was made aware of the juror names (see People v Reinfurt, 241 AD3d at 1021; People v Goberdhan, 241 AD3d at 999-1000), the record is devoid of any indication that such occurred here, "which materially heightens the risk of prejudice" (People v Cassell, ___ AD3d at ___, 2026 NY Slip Op 02173, *5; see People v Flores, 153 AD3d 182, 191-192 [2d Dept 2017], affd 32 NY3d 1087 [2018]). We therefore exercise our interest of justice jurisdiction, reverse and remit for a new trial.

In light of our determination, defendant's remaining contentions are largely rendered academic.FN8 Nevertheless, in anticipation of a new trial, we briefly address certain remaining issues that may reoccur.

Defendant contends that County Court erred in allowing the People to question him about his certain prior convictions and uncharged crimes during cross-examination. On his contention that County Court's decision to allow inquiry into defendant's prior conviction of criminal contempt in the second degree was an abuse of discretion, we disagree. "[T]he nature of [the] conduct or the circumstances in which it occurred bear logically and reasonably on the issue of credibility" (People v Smith, 18 NY3d 588, 593 [2012] [internal quotation marks and citation omitted]) and, although the similarity to a charged crime heightens the potential for prejudice, "similarity alone is insufficient to preclude cross-examination" (People v Gannon, 174 AD3d 1054, 1059 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 980 [2019]; see People v Vanwuyckhuyse, 224 AD3d 1315, 1316 [4th Dept 2024], lv denied 41 NY3d 967 [2024]). Moreover, County Court limited the scope of inquiry reflecting an appropriate balance of those considerations (see People v Martin, 136 AD3d 1218, 1218-1219 [3d Dept 2016], lv denied 28 NY3d 972 [2016]; People v Grady, 40 AD3d 1368, 1370 [3d Dept 2007], lv denied 9 NY3d 923 [2007]). Accordingly, acknowledging that there is an inconsistency in County Court's determination to disallow a 2017 conviction for witness tampering, which was also charged in this indictment, we find that in this instance the inconsistency inures to defendant's benefit.

However, we agree with defendant that County Court abused its discretion when it allowed the People to inquire about the underlying facts associated with the issuance of the order of protection against defendant, which he violated and for which he was ultimately convicted of criminal contempt. The probative underlying facts of that conviction would have been that defendant had an order of protection [*12]against him, and that he violated that order of protection by contacting the protected party. That County Court allowed the People to inquire about the basis for the underlying order of protection — i.e., a significant instance of domestic violence not unlike that for which he was charged in the present indictment — was extremely prejudicial and served no purpose regarding defendant's credibility (see People v Benton, 243 AD3d 1118, 1123 [3d Dept 2025]). Moreover, we find no merit to the subsequent determination that defendant's reference to a "dispute" that led to the relevant order of protection opened the door for the People to elicit highly prejudicial testimony regarding what that "dispute" entailed (compare People v Saunders, 244 AD3d 1581, 1584-1585 [3d Dept 2025]; People v Heiserman, 212 AD3d 949, 951 [3d Dept 2023], lv denied 39 NY3d 1141 [2023]).

Finally, defendant contends that counts 9, 10, 12 and 13 were lesser included offenses of other counts in the indictment — counts 6, 7, 5 and 1, respectively — and, accordingly, they should have been dismissed as inclusory concurrent counts. "Concurrent counts are 'inclusory' when the offense charged in one is greater than any of those charged in the others and when the latter are all lesser offenses included within the greater" (CPL 300.30 [4]; see People v Walker, 237 AD3d 978, 979 [2d Dept 2025]). "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense' " (CPL 1.20 [37]; see People v Smith, 174 AD3d 1039, 1043-1044 [3d Dept 2019], lv denied 35 NY3d 1097 [2020]). As charged here, defendant's unlawful imprisonment in the second degree (count 13) is a lesser included offense of kidnapping in the second degree (count 1) (see Penal Law §§ 135.00 [2]; 135.05, 135.20; People v Barnette, 150 AD3d 1136, 1137 [2d Dept 2017], lv denied 29 NY3d 1123 [2017]; People v Cole, 140 AD3d 1183, 1184 [2d Dept 2016], lv denied 28 NY3d 970 [2016]). Similarly, the date ranges in the indictment are identical for the underlying counts of criminal contempt in the second degree (counts 9 and 10) and assault in the third degree (count 12) and the aggravated family offense counterparts (counts 6, 7 and 5). It was therefore impossible for defendant to commit contempt and assault without, by the same conduct, committing the respective aggravated family offenses (see People v Powell, 236 AD3d 1239, 1243 [3d Dept 2025], lv denied 43 NY3d 1058 [2025]; People v Sharlow, 217 AD3d 1120, 1124 [3d Dept 2023], lv denied 40 NY3d 1013 [2023]). Accordingly, upon retrial, County Court should submit each of these lesser included offenses "in the alternative only" (People v Saeli, 219 AD3d 1122, 1125 [4th Dept 2023], lv denied 40 NY3d 1040 [2023]).

Aarons, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ., concur.

ORDERED that the judgment is reversed, on the law and as a matter [*13]of discretion in the interest of justice, counts 5 and 12 of the indictment dismissed with leave to re-present, and matter remitted to the County Court of Saratoga County for a new trial.

Footnotes

Footnote 1

1 To the extent defendant lodges broad attacks on the victim's credibility, we find his arguments without merit. Said simply, "defendant's arguments amount to disagreements with the jury's resolution on matters of credibility and, on that premise, we discern no reason to disturb that determination or otherwise conclude that the [victim's] account[ was] inherently unbelievable or incredible as a matter of law" (People v Cuadrado, 227 AD3d 1174, 1178 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 969 [2024]; see People v Whitbeck, ___ AD3d ___, ___, 2026 NY Slip Op 02305, *3 [3d Dept 2026]; People v Swartz, 235 AD3d 1098, 1101 [3d Dept 2025]; People v Miley, 229 AD3d 969, 971-972 [3d Dept 2024], lv denied 42 NY3d 971 [2024]).

Footnote 2

2 We quickly dispense with defendant's contention that the indictment as to count 4 was jurisdictionally defective because it failed to allege that defendant's conduct was "in violation of a duly served order of protection" (Penal Law § 215.51 [b] [iv]). That assertion is roundly controverted by the relevant language in the indictment making clear reference to an order of protection and alleging that defendant made numerous phone calls, with intent to "harass, annoy, threaten or alarm," to the victim.

Footnote 3

3 The application is not contained in the record on appeal.

Footnote 4

4 Defendant also contends that County Court erred in denying his motion during trial seeking, in part, disqualification of the DA's office due to the People's "unfettered access" to defendant's privileged jail calls with his counsel. County Court held a hearing and heard the testimony of three assistant district attorneys who, in the course of reviewing thousands of jail calls, had accessed recordings of privileged phone calls between defendant and his counsel, but had immediately ceased listening upon hearing counsel's voice. Crediting those accounts, County Court properly determined that the inadvertent and brief access to those calls did not prejudice defendant and, consequently, there was no justification for removing the DA's office (see Matter of Soares v Herrick, 88 AD3d at 152-153).

Footnote 5

5 Of note, defendant had received a disclosure from the People from their forensic examination of the cell phone — that data that was precluded from introduction at trial by County Court's suppression order.

Footnote 6

6 The People's closing argument suggested to the jury that they could find any or all of defendant's attacks as satisfactory for purposes of the statute.

Footnote 7

7 In substance, the People do not dispute that characterization and, in any event, the "numbers" jury that was utilized here clearly constitutes an anonymous jury (see People v Flores, 153 AD3d 182, 189-190 [2d Dept 2017], affd 32 NY3d 1087 [2018]).

Footnote 8

8 Any arguments related to the issues addressed herein have been considered and found without merit.